**Norman I. SUCHOMAJCZ, Administrator of the Estate of Norman Suchomajcz, a minor, et al.**

v.

**HUMMEL CHEMICAL COMPANY.**

**Civ. A. No. 71–1833.**

United States District Court,
E. D. Pennsylvania.

Oct. 10, 1974.

Joseph Lurie, Philadelphia, Pa., for plaintiffs.

John J. Tinaglia and Lisa J. Holzager, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

The question in this case is whether a manufacturer is responsible for harm caused by the improper use of its products. The suit is one of many arising out of an explosion in which six children were killed or injured. Before the court is defendant's motion for summary judgment.

Between November 1967 and November 1968, Hummel Chemical Company, a manufacturer of chemicals, food and vitamin products, sold Edwin C. Christie, Christie Industries and/or Ecco Products, certain chemicals which Christie

used in the fabrication of fireworks and firecracker assembly kits. At the time, Christie was under various injunctions prohibiting him from shipping firecracker assembly kits through interstate commerce. For the purpose of this motion defendant concedes it was aware of the nature of Christie's business and the injunctions against it.

In the latter portion of 1969, in response to an advertisement in Popular Mechanics, Gregory Kranyak, a minor, ordered a fireworks assembly kit from Christie. Three or four months later, Kranyak ordered a second kit. Both were sold in violation of the injunctions against Christie.

On July 4, 1970, Kranyak took his fireworks kits into a park in Chester, Pennsylvania, abandoning a portion of them in a bottle. Two days later, someone threw a match into the bottle and it exploded, killing two children and injuring four others. Plaintiffs are these children or their personal representatives.

In their complaint, plaintiffs contend that Hummel is liable on any of three theories: first, on the grounds of common law negligence in that Hummel was reckless and careless because it sold hazardous and dangerous materials to Christie which Hummel knew or should have known were to be used for sale in violation of the injunction against Christie; second, under Section 388 of the Second Restatement of Torts for having supplied chattel which it knew was likely to be dangerous for the intended use; and third, because strict liability is imposed for abnormally dangerous activities.

 In a motion for summary judgment under F.R.Civ.P. 56(b), all plaintiffs' well-pleaded material allegations must be taken as true. Moreover, the court should give plaintiffs the benefit of all favorable inferences that might reasonably be drawn from the evidence, placing the burden on defendant of proving the absence of any issue of fact. Janek v. Celebrezze, 336 F.2d 828 (3d Cir. 1964). Finally, judgment for the movant can only be granted if he is clearly entitled to it as a matter of law. Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed. 2d 458 (1962); Bland v. Norfolk & S. R.R., 406 F.2d 863, 866 (4th Cir. 1969); 10 C. Wright & Miller, Federal Practice and Procedure § 2725, at 498 (1973).

The issues presented by this case must be determined by the application of Pennsylvania law. See Gross v. McDonald, 354 F.Supp. 378 (E.D.Pa.1973); Cipolla v. Shaposka, 439 Pa. 563, 267 A. 2d 854 (1970). Because there are no precise Pennsylvania precedents, it is necessary for me to predict what the Pennsylvania Supreme Court would rule if these issues came before it. Quinones v. United States, 492 F.2d 1269, 1273 (3rd Cir. 1974).

Plaintiffs first allege that Hummel was negligent when it sold chemicals to Christie knowing that Christie would package the chemicals and ship fireworks assembly kits in interstate commerce in violation of various injunctions, thus "creating a threat of injury to the children of this country."

Conduct is recognized as negligent in Pennsylvania if the likelihood of harm could have been reasonably foreseen and prevented by the exercise of reasonable care. Lerro v. Thomas Wynne, Inc., 451 Pa. 37, 41, 301 A.2d 705 (1973).[1] See Quinones v. United States, supra. Before a party may recover for negligence, under Pennsylvania law, he must prove, *inter alia*, the existence of a duty *owed to him* and a breach thereof. Peatross v. Southwark Minit-Man Corp., 415 Pa. 129, 132, 202 A.2d 102 (1964); Evans v. Liberty Mutual Ins. Co., 398 F.2d 665, 667 (3d Cir. 1968). As the Supreme Court of Pennsylvania has observed:

> no negligence claim can be based upon a state of facts on which the law does

---

1. Prosser defines negligence as the failure of a person to conform to a standard of conduct that protects another from unreasonable risks. W. Prosser, Law of Torts § 30, at 143 (4 ed. 1971). *See* Restatement of Torts (Second) § 282.

not impose a duty upon the defendant in favor of the plaintiff . . .

Boyce v. United States Steel Corp., 446 Pa. 226, 230, 285 A.2d 459, 461 (1971).

■ In this instance, plaintiffs have failed to show the existence of any duty which Hummel owed to them. Hummel simply supplied Christie with various nondangerous chemicals, which in themselves could do no harm. It was only after Christie assembled the separate components into a kit that defendant's products became an instrumentality that could injure children—and in this instance, the injury came only when the fireworks had been improperly abandoned and were then negligently ignited.

To hold that Hummel could be liable to these plaintiffs would be to extend the concept of duty far beyond the limit that any Pennsylvania case suggests. What plaintiffs are really contending is that a manufacturer must police those who purchase his products to be sure that their products, even if improperly used, will not have the potential to do harm. Thus, a supplier of metal would have to be sure that if he sells to a manufacturer of wrenches, each wrench will be made in such a way that it will not shatter on impact because wrenches are sometimes improperly used as hammers. Or, if he sold to a cartridge company, the supplier of metal would have to use reasonable care to be sure that no one purchased bullets who would use them improperly. It is obvious that commerce, if so restricted, could not long exist.

Of course, to say that Hummel does not owe a legal duty to plaintiffs is a shorthand way of expressing those policy considerations which mean that the law's protection will not be extended beyond a certain point. While factually Hummel was a part of the chain of circumstances which ended so tragically for plaintiffs, liability is determined by a different measure.

An examination of Pennsylvania decisions shows that the ambit of protected activity is necessarily a restricted one. Thus, in Boyce v. United States Steel

Corporation, 446 Pa. 226, 285 A.2d 459 (1971), an employee of an independent contractor was held to have no right against a landowner for failing to discover a condition of peril in which the employee had placed himself. In Peatross v. Southwark Minit-Man Corp., 415 Pa. 129, 202 A.2d 102 (1964), there was no breach of duty by a defendant for failing to ascertain the identity of a negligent person who injured the plaintiff, while in Neyman v. Soutter, 205 Pa.Super. 8, 205 A.2d 685 (1964), the Superior Court refused to hold the defendant responsible simply because she knew her adult son had access to the gun with which he injured the plaintiff.

In Brogan v. Philadelphia, 346 Pa. 208, 29 A.2d 671 (1943), one Meyer was building row houses and Adams was doing the brick work. Meyer got a permit from the city to place building material on the street. Brogan was injured when struck in the face with a splash of mortar caused by boys throwing stones in a mortar box. Brogan contended the city was negligent in allowing the box to remain in the street knowing that children would use the mortar while they played. The jury found for the city and in Brogan's favor against Meyer and Adams. In affirming the verdict, the Supreme Court of Pennsylvania held that since the street was not defective and the storage of materials did not interfere with the right to travel there was no breach of duty to the plaintiff on the part of the city.

Certainly, if Brogan had sued the company who supplied the mortar, the court would have also found no breach of duty on its part even if it knew children would splash the mortar in front of Meyer's building. See also Wooldridge Manuf. Co. v. United States, 98 U.S. App.D.C. 286, 235 F.2d 513, cert. denied, 351 U.S. 989, 76 S.Ct. 1054, 100 L.Ed. 1502 (1956); Toppi v. United States, 332 F.Supp. 513, 517–519 (E.D.Pa. 1971); Johnson v. Weyerhaeuser Co., 189 F.Supp. 735 (D.Ore.1960).

What legally protected duty toward plaintiffs did Hummel breach by selling

nondangerous chemicals to Christie? Should it not have sold chemicals at all or was Hummel obligated to make sure that plaintiffs received proper notice as to the dangerous propensity of the fireworks kits that Christie had sold to George Kranyak. There might be something in plaintiffs' theory if Hummel was the only source of these particular chemicals. However, defendant is simply one of many suppliers and to impose a duty under these circumstances would make it impossible to supply anything to anyone without a risk of liability to everyone.

Here, a legal duty to plaintiff arose when Christie took the various chemicals and other components bought from different suppliers and combined them into a firecracker assembly kit. As the Third Circuit pointed out in United States v. Christie Industries, Inc., 465 F.2d 1002, 1007 (3d Cir. 1972), Christie's shipment of individual components was not enjoined only when enough materials were shipped to enable a child to make a firecraker would the transaction come under the federal court injunction.

> Christie was *under an obligation* to take steps to insure that violations of the order would not occur. (emphasis added)

*Id.* It was precisely the act of combining the separate, nondangerous components into a kit that gave rise to a reasonably foreseeable risk and therefore a duty on Christie's part to the plaintiffs.

Plaintiffs further argue that Section 388 of the Restatement,[2] chattel known to be dangerous for intended use, is directly applicable to the present situation. They claim Hummel's sale of "chemicals

endangered all the children in America 'by its possible use.' "

The law is well established that a manufacturer of a potentially dangerous substance owes the user a duty to exercise reasonable care and give adequate warning of the dangerous nature of the substance. Thomas v. Arvon Products Co., 424 Pa. 365, 369, 227 A.2d 897 (1967). However, for this rule to apply, the substance must be dangerous for the use for which it is supplied and the users must have no knowledge or reason to realize its dangerous condition. Roberts v. United States, 316 F.2d 489, 494 (3d Cir. 1963). Here, there is no assertion that the chemicals Hummel sold were in themselves dangerous. They only become so when they are mixed together and then ignited. Moreover, as Comment "e" to Section 388 states,

> *Ambit of liability.* The liability stated in this Section exists only if physical harm is caused by the use of the chattel by those for whose use the chattel is supplied, and in the manner for which it is supplied.

Here, the use was not by Christie, nor even by Christie's purchaser, Kranyak, but by the unknown person who threw the match into the bottle.

Croteau v. Borden Co., 277 F.Supp. 945 (E.D.Pa.), aff'd, 395 F.2d 771 (3d Cir. 1968), is a case right on point. There defendant supplied plaintiff a nonexplosive chemical. Plaintiff, engaged in solid rocket fuel research, mixed this chemical with another, attempting to create a third compound. An explosion occurred. The court found that the nondefective chemical supplied by Borden did not cause the explosion

---

**2.** § 388 Chattel Known to be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

and therefore Section 388 was not applicable. Judge Fullam stated:

> I know of no basis for imposing liability upon the manufacturer of a product for damage caused by someone else's product, at least in the absence of any suggestion that the damage resulted from a defect in the underlying ingredient. This is not a case of a component part after assembly, but of a complete change in the substance of the chattel.

*Id.* at 947. See Noel, *Products Liability, Bystanders, Contributory Fault and Unusual Uses*, 50 F.R.D. 321, 333 (1970).

 I have a similar situation before me. Until Christie collected the chemicals in a kit and offered instruction on the making of fireworks there was no possibility of danger to anyone. To hold a supplier of a nondangerous substance liable for the damage caused after another altered the nature of the substance is to extend the bounds of liability far beyond the limit set by Pennsylvania law.

Plaintiffs also claim that Hummel is liable under a theory of strict liability for abnormally dangerous activities. Unfortunately, the Supreme Court of Pennsylvania, in Haddon v. Lotito, 399 Pa. 521, 161 A.2d 160 (1960), found absolute liability not applicable to the discharge of fireworks. The court held that using fireworks was not an ultrahazardous activity of the type which would create liability without proof of negligence. See also Progar. v. Washington Hospital, 49 Pa.D. & C.R.2d 485, 488–493 (C.P.Wash.Cty.1970).

Furthermore, both parties admit that Section 402A is inapplicable since there is no allegation that the chemicals were defective. See Wojciechowki v. Long-Airdox Division of Marmom Group Inc., 488 F.2d 1111 (3d Cir. 1973); D'Antona v. Hampton Grinding Wheel Co., 225 Pa.Super. 120, 310 A.2d 307 (1973)

Finally, defendant argues that liability in this case should be decided on the basis of the social utility of conduct, weighing the benefit to society of that conduct against the injury to the plaintiffs. See Clewell v. Pummer, 384 Pa. 515, 520, 121 A.2d 459 (1959); Restatement of Torts (Second) § 291 comment a. However, my job is not to break new ground for the Supreme Court of Pennsylvania, but to predict how far that court would go at this time with this question. I can find no basis on which to conclude Pennsylvania would hold Hummel liable under the facts in this case.

Ordinarily, summary judgment is not granted in negligence cases. Block v. Biddle, 36 F.R.D. 426, 428 (W. D.Pa.1965). When I find, however, as a matter of law, that defendant owed no legal duty to plaintiffs and no other theory of liability is applicable, I must grant defendant's motion. Bland v. Norfolk & S. R. R., 406 F.2d 863, 866 (4th Cir. 1969).