**Norman I. SUCHOMAJCZ, Administrator of the Estate of Norman Suchomajcz, a minor, et al., Appellants,**

v.

**HUMMEL CHEMICAL COMPANY, NEWARK, NEW JERSEY, et al.**

No. 74–2216.

United States Court of Appeals, Third Circuit.

Argued May 12, 1975.

Decided Sept. 24, 1975.

Joseph Lurie, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for appellants.

John J. Tinaglia, Lisa J. Holzsager, Philadelphia, Pa., for Hummel Chemical Co.

Before ADAMS, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The use of firecrackers has its fascinations but also involves serious risks to participants and public. The primary issue raised on this appeal is whether a supplier of a fireworks component, harmless in itself, sustains liability when he sells the component to a fabricator of fireworks assembly kits who he knows sells the kits contrary to law and in violation of a court injunction, and when children are injured by an accidental explosion of a kit abandoned by its purchaser.

Plaintiffs, six minor children, have instituted this wrongful death and survival action in the United States District Court for the Eastern District of Pennsylvania against Hummel Chemical Company (Hummel), a New Jersey manufacturer. Their complaint alleged that Hummel sold some of its chemical products to Edwin C. Christie, Christie Industries, Inc., and Ecco Products (Christie), notwithstanding it knew or had reason to know that Christie would use the chemicals to manufacture and ship firecracker assembly kits in violation of federal law and several federal injunctions forbidding him from shipping the kits through interstate commerce. See United States v. Christie Indus., Inc., 465 F.2d 1002 (3d Cir. 1972).

In 1969, in response to an advertisement in Popular Mechanics, Gregory Kranyak, a minor, ordered a firecracker assembly kit from Christie. Several months later Kranyak ordered a second kit. Both kits were sold by Christie in violation of the injunctions. On July 4, 1970, Kranyak abandoned a portion of the kits in a bottle in a park in Chester, Pennsylvania. Two days later, someone threw a match into the bottle, causing an explosion which killed two of the minor plaintiffs and injured the other four.

In their complaint, plaintiffs contended that Hummel was liable (1) on the ground of common law negligence in that Hummel was reckless and careless in selling hazardous and dangerous materials to Christie, which Hummel knew or should have known were for use in the sale of firecracker assembly kits in violation of the federal injunctions; (2) under section 388 of the Restatement (Second) of Torts for supplying without adequate warning a chattel which Hummel knew was likely to be dangerous for its intended use; and (3) under a theory of strict liability for abnormally hazardous activities. Upon a motion by Hummel for summary judgment, the district court held that the alleged facts did not establish liability on the part of Hummel under any of these theories. 385 F.Supp. 1387 (E.D.Pa.1974).

With respect to the negligence claim, the court found that plaintiffs were contending in effect "that a manufacturer must police those who purchase his products to be sure that their products, even if improperly used, will not have the potential to do harm." Id. at 1390. The court concluded that no such duty exists under Pennsylvania law. The court rejected plaintiffs' claim under section 388 of the Torts Restatement holding that the section applies only to dangerous substances and that Hummel's chemicals were not dangerous in themselves. The court also noted that section 388 imposes liability only if the persons harmed by the use of the chattel were those for whose use the chattel was supplied, and if the chattel was used in the manner intended by the manufacturer. Here, plaintiffs' injuries resulted from a third party throwing a match into a bottle in which the chemicals were abandoned. Finally, the court rejected plaintiffs' theory of strict liability for abnormally dangerous activities on the ground that

Pennsylvania does not apply this theory to the discharge of fireworks. Plaintiffs appeal; we reverse the judgment of the district court.

### I.

The parties have assumed that Pennsylvania law applies to the instant case. Although we agree, the question warrants brief discussion.

 As a diversity court, we must look to Pennsylvania's conflict-of-laws rules to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The instant situation, in which a New Jersey manufacturer sells a product to a New Jersey fabricator[1] knowing the fabricator will use the product as a component in firecracker assembly kits for interstate sales and Pennsylvania domiciliaries thereby are injured in Pennsylvania, has not been the subject of a Pennsylvania decision since the transformation in that state's conflicts law. This transformation dictates that we should apply the law of the predominantly concerned jurisdiction, measuring the depth and breadth of that concern by the relevant contacts each affected jurisdiction had with the specific transaction. The contacts are relevant only if they relate to the "policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21, 203 A.2d 796, 805 (1964).

This balancing-of-interests test appears to have been modified somewhat when a "true conflict" exists, *i. e.*, when the interests of the different states are of equal weight and truly in conflict. In *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970), the court was confronted with almost the converse situation as the one presented in this case. A Pennsylvania resident was injured in Delaware while riding as a guest in a car registered in Delaware and owned and operated by Delaware residents. Delaware had a guest statute; Pennsylvania did not. The court held that in this "true-conflicts" situation Delaware law should be applied since Delaware was the more concerned jurisdiction. The court, however, then noted that

it seems only fair to permit a defendant to rely on this home state law when he is acting within that state. . . . Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there. This is, of course, a highly territorial approach, but "departures from the territorial view of torts ought not be lightly undertaken." *Gordon v. Parker*, 83 F.Supp. 40, 42 (D.Mass.1949). . . . The very use of the term true conflict implies that there is no one correct answer, but as a general approach a territorial view seems preferable to a personal view.

*Id.* at 856–57 (footnote omitted). Pennsylvania's approach appears to be consistent with the view of the *Restatement (Second) of Conflict of Laws* §§ 145(a), 146, 156–157 (1971) which provide that the law determining whether the actor's conduct was tortious will usually be the law of the state where the injury occurred.

 If both Pennsylvania and New Jersey would apply the same substantive tort law to Hummel's activities, deciding which state's law to apply obviously is unimportant. If the two states would differ as to whether Hummel's activities are tortious, a true conflict is presented. The interest of one state in protecting its citizens against harm caused by Hummel's sales would be offset by the other state's interest in promoting its industries by not imposing liability. We believe that under these circumstances Pennsylvania would apply its tort law,

1. Christie's domicile does not appear in the record of this case but is revealed as New Jersey in *United States v. Christie Indus., Inc.*, 465 F.2d 1002 (3d Cir. 1972).

the law of the state where the injury occurred.

## II.

■ As there are no precise Pennsylvania precedents to guide us, we must predict how the Pennsylvania courts would rule in a similar case. *Kademenos v. Equitable Life Assurance Soc.*, 513 F.2d 1073 (3d Cir. 1975). We first note that summary judgment is never warranted except on a clear showing that no genuine issue of any material fact remains for trial after considering the pleadings and proof in the form of depositions, affidavits, and admissions on file. In determining the presence of a disputed issue of material fact on motion for summary judgment, "all inferences, doubts and issues of credibility" should be resolved against the moving party. *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972).

■ Under Pennsylvania law, no tort liability may be imposed upon a defendant not owing a duty to the injured plaintiff. *See Boyce v. United States Steel Corp.*, 446 Pa. 226, 230, 285 A.2d 459, 461 (1971); *Peatross v. Southwark Minit-Man Corp.*, 415 Pa. 129, 202 A.2d 102, 103 (1964). We believe that the alleged facts give rise to a jury question as to whether Hummel discharged two duties owing to the instant plaintiffs.

■ The first such duty rests on the responsibility each person bears to exercise care in his conduct to avoid unreasonable risk of harm to another.[2] As a general rule, "anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act." *Restatement (Second) of Torts* § 302, comment *a* at 82 (1965) (herein-

after "*Restatement*"). *See generally W. Prosser, Torts* § 53 (4th ed. 1971).

The scope of Hummel's duty to avoid affirmative negligent acts appropriately may be measured by section 302(b) of the *Restatement* which provides that "[a] negligent act or omission may be one which involves an unreasonable risk of harm to another through . . . (b) the foreseeable action of . . . a third party." The predecessor to section 302(b) and its special applications[3] often have been cited with approval by the Pennsylvania Supreme Court. *See, e. g., Snoparsky v. Baer*, 439 Pa. 140, 266 A.2d 707 (1970); *Anderson v. Bushong Pontiac Co.*, 404 Pa. 382, 171 A.2d 771 (1961); *Tua v. Brentwood Motor Coach Co.*, 371 Pa. 570, 92 A.2d 209 (1952). This court also has recognized section 302(b) as correctly stating the law of Pennsylvania. *See Smith v. Hobart Mfg. Co.*, 302 F.2d 570 (3d Cir. 1962).

■■ Section 302(b) requires that the risk of harm be unreasonable before an act may be found to be negligent. The standard for determining reasonableness is whether the magnitude of the risk of harm outweighs the social utility of the act. *Restatement* § 291. The magnitude of the risk in selling chemicals to Christie, knowing its intended and illegal use of the chemicals, is considerable, since there was a significant possibility that the firecracker assembly kits would cause serious bodily harm to a number of people. *See Restatement* § 293. The social utility of the sales is minimal, or at the least suspect, particularly since Christie used the chemicals in a product which had been declared illegal. *See Restatement* § 292.

Section 302(b) also requires that the act of the third party be foreseeable. The element of foreseeability has been the crucial determinant in the success of claims based on section 302(b). *See*

---

2. *See Hall v. E. I. Du Pont De Nemours & Co.*, 345 F.Supp. 353, 360 (E.D.N.Y.1972).

3. Sections 302A and 302B of the *Restatement* are special applications of the general principle stated in section 302(b) dealing respective-

ly with foreseeable tortious or criminal conduct by the third party. While these sections also may be relevant to this case, we prefer to discuss Hummel's duty as it relates to the general principle stated in section 302(b).

*Smith v. Hobart Mfg. Co.*, 302 F.2d 570 (3d Cir. 1962). Thus, in *Anderson v. Bushong Pontiac Co.*, 404 Pa. 382, 171 A.2d 771 (1961), plaintiff was injured when struck by an automobile driven by a 14-year-old boy who had stolen the car from a parking lot. The court reversed a dismissal of the suit against the owner of the parking lot because the alleged facts gave rise to a jury question as to whether the owner could foresee that the automobile was likely to be stolen by one who would be an incompetent driver. In *Liney v. Chestnut Motors, Inc.*, 421 Pa. 26, 218 A.2d 336 (1966), the court affirmed a dismissal of a suit by a plaintiff otherwise similarly situated to the plaintiff in *Anderson* because the complaint did not allege facts indicating that the defendant should foresee that the thief would be an incompetent driver.

Similarly, in *Neyman v. Soutter*, 205 Pa.Super. 8, 205 A.2d 685 (1964), *aff'd*, 417 Pa. 634, 209 A.2d 430 (1965), plaintiff was shot by the adult son of defendant with a gun allegedly under defendant's control. The court reversed a verdict in favor of plaintiff because the evidence did not indicate that defendant knew that her son was likely to misuse the gun. The court distinguished similar cases in which liability had been imposed against the owner of the gun because in such cases minors, who were likely to misuse guns, did the shooting.[4] *See, e. g., Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957) (12-year-old grandson did the shooting).

■ Significantly, the instant complaint alleges that Hummel knew or should have known that Christie intended to use the chemicals to manufacture and sell firecracker assembly kits prohib-

ited by law. This allegation of knowledge satisfied the foreseeability requirement of section 302(b).

The allegation of knowledge distinguishes this case from the hypotheticals proposed by the district court in which "a manufacturer must police those who purchase his products to be sure that their products, even if improperly used, will not have the potential to do harm." 385 F.Supp. at 1390. As discussed *infra*, Pennsylvania does impose liability upon a manufacturer for harm caused by misuse of its product, if that misuse was foreseeable. Courts that have not imposed liability upon the manufacturer for misuse of its product have refrained from doing so because the intended purpose of a product did not include the misuse to which it was put, and because the manufacturer was not bound to anticipate the negligent use of the product. *See Schemel v. General Motors Corp.*, 384 F.2d 802 (7th Cir. 1967); *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir.), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966). Moreover, such cases in actuality rest on a policy determination that the costs to society of imposing liability in such instances would outweigh the benefits. *See W. Prosser, Torts* § 43, at 250–51 (1971). In the instant case, Hummel knew that Christie intended to misuse its chemicals. As we have alluded, the social utility of knowingly selling chemicals for illegal use is minimal; the social consequences of such sales may be devastating.

■ A second duty which Hummel may not have discharged was the duty of the manufacturer of a potentially dangerous substance to warn the user of the dangerous nature of the substance.

---

4. *In these cases, it is difficult to determine whether the courts are relying on negligence principles formulated in either section 302 or section 308 or both. Section 308 provides:*

It is negligent to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner

as to create an unreasonable risk of harm to others.

In many instances, the duty imposed by section 308 is a specialized application of the duty under section 302. Cases arising under section 308 are useful in discussing the necessity of foreseeability under section 302, but such discussion does not imply that section 308 applies to this case.

*Thomas v. Arvon Prods. Co.*, 424 Pa. 365, 227 A.2d 897 (1967); *Hopkins v. E. I. Du Pont De Nemours & Co.*, 199 F.2d 930 (3d Cir. 1952). The various elements of this duty are prescribed in section 388 of the *Restatement* which provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is a supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

This section imposes liability upon a manufacturer to the user of this product only if three conditions are satisfied.

 First, the manufacturer must know or have reason to know that the chattel is likely to be dangerous for the use it is supplied. Hummel contends that this requirement was not met because the chemicals sold were harmless by themselves; they became potentially dangerous only when mixed with other chemicals. Hummel relies on *Croteau v. Borden Co.*, 277 F.Supp. 945 (E.D.Pa.), *aff'd*, 395 F.2d 771 (3d Cir. 1968), in which a harmless chemical, sodium azide, was combined with another chemical to produce a highly unstable compound which exploded. The court held that the manufacturer of the sodium azide was under no duty to warn users of any dan-

gerous qualities because, *inter alia*, the only danger connected with sodium azide occurred after reaction with another chemical, and that the manufacturer did not know that the sodium azide was to undergo the particular reaction. In the instant case, however, Hummel knew that its harmless chemicals would be used to produce a potentially explosive firecracker assembly kit. Moreover, one reasonably may infer that Hummel, aware of the nature of Christie's business, should have anticipated that the firecracker assembly kits would be handled by minors, in whose hands the chemicals were likely to be misused. We cannot say, therefore, that Hummel had no reason to believe that the chemicals were likely to be dangerous for their intended use.

 The manufacturer also must have no reason to believe that the intended user will realize the dangerous condition of the chattel. The duty to warn does not rise if the user is knowledgeable in the handling of the product.[5] For example, in *Croteau v. Borden Co., supra*, liability also was denied because the manufacturer reasonably could expect that the user, a chemist engaged in secret research on rocket fuels, would be familiar with the properties of sodium azide and the various potential dangers arising from its possible uses. Similarly, in *Toppi v. United States*, 332 F.Supp. 513 (E.D.Pa.1971), judgment was rendered for the manufacturer of an explosive chemical because the users, a chemical company and a safety chemical engineer, knew of the explosive potential of the chemical. *See generally Lockett v. General Electric Co.*, 376 F.Supp. 1201 (E.D.Pa.1974). As with the first requirement, however, Hummel should have known that the users of the kits were likely to be minors, and therefore had reason to know that the users would not appreciate the potential dangers of the chemicals.

---

5. For a curious application of this principle, compare, *Hopkins v. E. I. Du Pont De Nemours & Co.*, 212 F.2d 623 (3d Cir. 1954), *with Hopkins v. E. I. Du Pont De Nemours & Co.*, 199 F.2d 930 (3d Cir. 1952).

■ The third condition is that the manufacturer must fail to exercise reasonable care to inform the users of the dangerous conditions of the chattel. The determination of what constitutes reasonable care when the chattel is supplied through third parties depends on the nature of the harm which might result from the use of the chattel, the burden of supplying the warning, and the probability that the third party himself will transmit the warning to the user. *Restatement* § 388, comment *n.* Here, no warnings accompanied the chemicals for Christie to transmit to his buyers. The potential for harm resulting from use of the chemicals was significant. Whether these factors are outweighed by the burden of supplying the warning is within the province of the jury.

■ We therefore believe that the alleged facts presented a jury question as to whether Hummel violated its duty to avoid conduct which may involve an unreasonable risk of harm through the foreseeable action of a third party and its duty to warn users of the potentially dangerous nature of its products.[6] Of course, the failure of Hummel to discharge its duties under sections 302 and 388 is not enough to subject Hummel to liability. Hummel's failure also must have been the legal cause of plaintiffs' injuries. With respect to Hummel's duty under section 302, this requirement traditionally is stated as the element of proximate cause. Section 388 incorporates the requirement by providing that the manufacturer is liable only to those "whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use,

for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied." Since the doctrines of proximate cause and probable use are in reality but one expression of the same concept, we shall discuss the two together.[7]

Hummel contends that plaintiffs were not injured through the probable use of its products since they were not injured while assembling the firecrackers. Rather, Hummel contends that Kranyak, by negligently discarding the chemicals, misused the kit and absolved Hummel from liability as a matter of law. We disagree.

■ Liability generally is imposed upon a manufacturer only for injuries resulting from the use of the product in the manner intended. As comment *j* to section 395 of the *Restatement*, which provides for the same ambit of liability as section 388, explains:

> The liability stated in this Section is limited to persons who are endangered and the risks which are created in the course of use which the manufacturer should reasonably anticipate. In the absence of special reason to expect otherwise, the maker is entitled to assume that his product will be put to a normal use for which the product is intended or appropriate; and he is not subject to liability when it is safe for all such uses and harm results only because it is mishandled in a way which he has no reason to expect or is used in some unusual and unforeseeable manner.

Pennsylvania has long adopted the principles of section 395. *See Wissman v.*

---

6. Plaintiffs also contend that Hummel was liable under a theory of strict tort liability for ultrahazardous activities. Unfortunately for plaintiffs, Pennsylvania does not classify the use of firecrackers as an ultrahazardous activity. *Haddon v. Lotito*, 399 Pa. 521, 161 A.2d 160 (1960). This holding of *Haddon* was not overruled, as plaintiffs contend, by *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94 (Pa. 1974).

7. Neither the parties nor the district court discussed the question of proximate cause with

respect to Hummel's duty to avoid affirmative negligent acts through the foreseeable actions of third parties. Instead, they concentrated on the duties owing to plaintiffs. The element of probable use is incorporated in section 388 and therefore must be involved in any discussion of Hummel's duty under this section. Since the concept of probable use is so closely related to proximate cause, our discussion of the former concept necessarily involves consideration of the other.

*General Tire Co.,* 327 Pa. 215, 192 A. 633 (1937).

An application of this principle may be found in *Littlehale v. E. I. du Pont de Nemours & Co.,* 268 F.Supp. 791 (S.D.N. Y.1966), *aff'd,* 380 F.2d 274 (2d Cir. 1967). Du Pont had manufactured blasting caps for use by Army Ordnance personnel. The district court concluded that a duty to warn its customers could not arise "at some later date by reason of some unforeseeable disposition of the product by [the] initial purchaser." 268 F.Supp. at 803. The Second Circuit affirmed, concluding that "as a matter of law, du Pont . . . could not have foreseen that its detonators would be used by a person untrained in the handling of such explosives and in a manner that was never intended." 380 F.2d at 276.

■ The doctrine of intended use, however, cannot shield a manufacturer from liability resulting from misuse of the product if that misuse is foreseeable. Comment *k* to section 395 notes that "[the] manufacturer may, however, reasonably anticipate other uses· than the one for which the chattel is primarily intended. The maker of a chair, for example, may reasonably expect that some one will stand on it . . . ."

The Pennsylvania Supreme Court has held that in a products liability case arising under section 402A "whether . . a particular use of a product is abnormal depends on whether the use was reasonably foreseeable by the seller." *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457. Pa. 321, 319 A.2d 914, 921 n. 13 (1974). The court cited with approval *Dyson v. General Motors Corp.,* 298 F.Supp. 1064 (E.D. Pa.1969), in which Judge Fullam, after a thorough review of the problem, concluded that Pennsylvania would hold an auto manufacturer liable for not building

"crashworthy" cars since such misuse of the cars was foreseeable. The principle that a manufacturer is liable for a foreseeable misuse of his product is consistent with the more general Pennsylvania rule that· the intervening negligent act · of a third party does not constitute a superseding cause shielding a tortfeasor from liability unless the intervening act was unforeseeable, highly extraordinary, or extraordinarily negligent. *Flickinger v. Ritsky,* 452 Pa. 69, 305 A.2d 40, 43 (1973); *see Restatement* § 447.

■ Thus, assuming Kranyak's discard of the chemicals in a bottle was negligent, such misuse of the chemicals insulates Hummel from liability only if such misuse was not foreseeable.[8] Pennsylvania has recognized that "[c]hildren must be expected to act upon immature judgment, childish instincts and impulses; others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly." *Styer v. City of Reading,* 360 Pa. 212, 61 A.2d 382, 385 (1948). Thus, Pennsylvania specifically has noted that minors are likely to misuse such dangerous items as motor vehicles, diminutive railroad trains, and firearms. *See, e. g., Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968) (motor vehicles); *Hogan v. Etna Concrete Co.,* 325 Pa. 49, 188 A. 763 (1936) (diminutive railroad trains); *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957) (firearms). Whether Kranyak's[9] misuse of the chemical was reasonably foreseeable by Hummel is a question to be decided by the ultimate fact-finder. *See Flickinger v. Ritsky,* 452 Pa. 69, 305 A.2d 40, 43 (1973). Moreover, the chemicals in the assembly kit were potentially dangerous precisely because of the probability that the chemicals would be misused. Since Hummel's duty to warn arises from the

8. The concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury. 2 *Harper & James, The Law of Torts* § 18.2 at 1026, § 20.5 at 1147–49 (1956). Thus, our consideration of foreseeability is lim-

ited to determining whether the chemicals were likely to be misused, not the foreseeability of Kranyak's particular misuse.

9. The record reveals that Kranyak was a minor but does not reveal his exact age.

probability that the chemicals would be misused, such misuse would not be a superseding cause, nor an unforeseeable use. *See Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968); *Restatement* § 449.

We believe that plaintiffs have alleged facts which present prima facie causes of action under sections 302 and 388 of the *Restatement* and that the grant of summary judgment was improper. The judgment of the district court will be reversed.