**REPUBLIC STEEL CORPORATION,
Plaintiff,**

v.

**UNITED MINE WORKERS OF
AMERICA et al., Defendants.**

**Civ. A. No. 76–92.**

United States District Court,
W. D. Pennsylvania.

March 21, 1977.

Richard I. Thomas, and John T. Ferguson, II, Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

Paul M. Puskar, of Kuhn, Engle, Blair & Stein, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

This action arises under Sec. 301 of the Labor Management Relations Act. On January 30, 1976, a preliminary injunction was issued. This was prior to the decision of the Supreme Court in *Buffalo Forge*. The injunction prohibited defendants from engaging in any strike "arising from the presence of pickets at the mine portals who are members of the United Mine Workers not employed by plaintiff". The parties were also directed to arbitrate the underlying dispute. The question of damages remains before the court.

Defendants now move for summary judgment based on the decisions of *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 [1976], and *United States Steel v. United Mine Workers*, (U.S. Steel II) 548 F.2d 67 [3d Cir. 1976]. Specifically, defendants contend that the work stoppages complained of by plaintiff were not subject to the grievance arbitration provisions of the 1974 Agreement and thus did not constitute a breach of the collective bargaining agreement.

Republic makes several arguments why summary judgment should not be granted. First, Republic contends that a factual question exists as to whether defendants breached their contractual duty to take action reasonably calculated to stop the spread of unlawful and unauthorized strikes, contrary to their obligation under *Eazor Express, Inc. v. International Brotherhood of Teamsters*, 520 F.2d 951 [3d Cir. 1975]. In this connection Republic quotes *United States Steel v. UMW*, (U.S. Steel II), *supra* :

> "We decline to consider whether the rationale of *Eazor Express* would permit an employer to recover damages for the failure of a Union to take all reasonable steps to prevent the spread of an unauthorized and allegedly illegal strike against another employer. This case was not tried on that theory."

Republic asserts liability not only for the Union's failure to stop Republic's employees from striking but also for failing to stop other UMW members, not employees of Republic, from spreading an unauthorized and allegedly illegal strike against another employer to Republic's mines.

Republic further contends that neither *Buffalo Forge* nor *United States Steel* is dispositive of the damage issue in this case. Republic would distinguish Buffalo Forge on the grounds that it involved a sympathy strike in support of a strike that was "bona fide, primary and legal". Republic suggest that the underlying strike in this case was "mala fides, secondary, and illegal."

The record in this case clearly establishes for present purposes that the strike was a "sympathy strike" honoring a picket line established by UMWA members.

■ In paragraph 13 of the complaint, plaintiff alleges that defendants John Doe and Richard Roe, one or more persons whose identity is unknown, were employed in the coal mining industry, that they are active members in good standing of defendant UMWA, and that they reside and work in West Virginia or Southwestern Pennsylvania. Defendant admits these allegations in its answer. Defendant also admits that these pickets appeared at plaintiff's Clyde and Banning Mines at 12:01 a. m., January 19, 1976, and that plaintiff's employees refused to cross a picket line established at each mine. The preliminary injunction implicitly finds a refusal of local union members to cross stranger pickets. Drawing all inferences in favor of plaintiff's position, as we must on a motion for Summary Judgment, *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 [1962]; *Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19 [3d Cir. 1975], we will assume that plaintiff can establish that defendants or their members engaged in a sympathy strike in support of stranger pickets who were also UMWA members.

■ *Buffalo Forge* held that a court cannot, in the face of § 301 of the LMRA, enjoin a sympathy strike pending the arbitrator's decision as to whether the strike is forbidden by the express no-strike clause contained in the collective bargaining agreement. The Court distinguished *Boys Markets v. Retail Clerk's Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 [1970]:

"*Boys Markets* plainly does not control this case. The District Court found, and it is not now disputed, that the strike was not *over* any dispute between the Union and the employer that was even remotely subject to the arbitration provisions of the contract. The strike at issue was a sympathy strike in support of sister unions negotiating with the employer; neither its causes nor the issues underlying it were subject to the settlement procedures provided by the contract between the employer and respondents. The strike had neither the purpose nor the effect of denying or evading an obligation to arbitrate or of depriving the employer of his bargain. Thus, had the contract not contained a no-strike clause or had the clause expressly excluded sympathy strikes, there would have been no possible basis for implying from the existence of an arbitration clause a promise not to strike that could have been violated by the sympathy strike in this case." 428 U.S. at 406–407, 96 S.Ct. at 3147 (emphasis in original).

This conclusion was made in the face of an express no-strike clause containing a duty to arbitrate. The no-strike clause made no reference, however, to sympathy strikes.

■ *Buffalo Forge's* narrow holding is understood by the Supreme Court's itemization of what was *not* in dispute. See 428 U.S. at 397, 96 S.Ct. 3141. First of all, *Buffalo Forge* involved a sympathy strike. The strike did not arise by reason of any dispute between the Local and the employer, but was in support of a sister local union belonging to the same international. Further, the employer was entitled to invoke the arbitral process to determine the legality of the strike and to obtain a court order, if necessary, to require the Union to arbitrate. If the employer prevailed in the arbitration, an injunction to enforce the arbitrator's award would be permissible. *Buffalo Forge* prohibited courts only from enjoining sympathy strikes pending the arbitrator's determination whether the strike violated the parties' agreement.

More recently, in *United States Steel Corp. v. UMW,* (U.S. Steel II) 548 F.2d 67 [3d Cir. 1976], the Circuit held that under the National Bituminous Coal Wage Agreement of 1968, which contained a grievance-arbitration provision but not an express no-strike clause, the union could not be held liable for damages for participation of union members in a sympathy strike. This is because the strike presented no arbitral is-

sue and was not a breach of the collective bargaining agreement.

Starting with *Buffalo Forge, United States Steel* reasons:

"The Supreme Court's decision indicates that in order for a work stoppage to be enjoinable pending arbitration, the collective bargaining agreement must provide arbitration procedures and the dispute that precipitates the stoppage must be subject to binding arbitration under the terms of the contract. The propriety of an award of monetary damages resulting from a work stoppage, on the other hand, depends on the determination whether the union is under a contractual duty not to strike. Because the collective bargaining agreement in the instant case did not contain an express no-strike clause, that determination in turn depends on whether the dispute underlying the work stoppage was arbitrable. *Gateway Coal Co. v. UMW*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). In both cases, therefore, arbitrability is a key issue. What *Buffalo Forge* establishes regarding the arbitrability of sympathy strikes is as applicable to this particular suit for monetary damages as it is to a request for injunctive relief."

\* \* \* \* \* \*

"In this case, as in *Buffalo Forge,* the strike was not 'over any dispute between the Union and the employer that was even remotely subject to the arbitration provisions of the contract.' 428 U.S. at 407, 96 S.Ct. at 3147 (emphasis in original). The Robena strike, like the strike in *Buffalo Forge,* 'was a sympathy strike . . . ; neither its causes nor the issue underlying it were subject to the settlement procedures provided by the contract between the employer' and the union. Id. The job-bidding dispute at the Humphrey mine which precipitated the Robena work stoppage was a dispute between the Christopher Coal Company and the members of UMW Local 1058; that dispute could not possibly have been arbitrated by the United States Steel Corporation and UMW Local 6321. Had the

contract in the instant case contained a no-strike clause, the issue whether the sympathy strike violated the union's no-strike undertaking might have been arbitrable. In the absence of a no-strike clause, however, *Buffalo Forge* establishes that there is 'no possible basis for implying from the existence of an arbitration clause a promise not to strike that could have been violated by the sympathy strike' in this case. 428 U.S. at 407–408, 96 S.Ct. at 3147. To the extent that *Island Creek Coal Co. v. UMW,* 507 F.2d 650 (3d Cir.), cert. denied 423 U.S. 877, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975), suggests otherwise, it seems clear that that decision cannot survive *Buffalo Forge.*

\* \* \* \* \* \*

Quite simply, the work stoppage at the Robena Mine presented no arbitrable issue.

█ *Buffalo Forge* does not change existing labor law except to limit injunctive relief against sympathy strikes pending the arbitrator's determination whether the strike is barred by the collective bargaining agreement. Even then, a court may require the union to arbitrate, but may not require it to go back to work pending the arbitration.

While *Buffalo Forge* involved a sympathy strike by a sister local union belonging to the same international union (which was also a defendant), the Supreme Court did not consider the question of whether the international union was contractually bound not to order a sympathy strike or to take steps to prevent one. The question of whether a union might be liable to an employer for failure to take all reasonable steps to prevent the spread of an unauthorized and allegedly illegal strike at another employer, also contractually bound to the same union, was raised in *U. S. Steel II.* The Court declined to decide that question since the case was not tried on that theory in the trial court. See also, *United States Steel Corp. v. UMW of America,* (U.S. Steel I), 534 F.2d 1063 [3d Cir. 1976].

*U. S. Steel II* goes one step beyond *Buffalo Forge.* Its conclusion that the logic of

*Buffalo Forge* prevents the recovery of damages because there is no arbitral issue is in apparent conflict with the caveat in *Buffalo Forge* that:

"Whether the sympathy strike the Union called violated the no-strike clause, and the appropriate remedies if it did, are subject to the agreed-upon dispute-settlement procedures of the contract and are ultimately issues for the arbitrator. [citations omitted]." 428 U.S. at 404, 96 S.Ct. at 3146.

However, in *U. S. Steel II* the issue of damages was determined by a jury, prior to the *Buffalo Forge* decision. Further, while *U. S. Steel II* holds that a sympathy strike presents no arbitral issue that could give rise to a suit for damages, it explicitly declined to consider whether "the rationale of *Eazor Express* [*Eazor Express, Inc. v. International Brotherhood of Teamsters,* 520 F.2d 951 [3d Cir. 1975]] would permit an employer to recover damages for the failure of a union to take all reasonable steps to prevent the spread of an unauthorized and allegedly illegal strike against another employer." That question has been raised by Republic in this case, and we must consider it.

■ Republic argues that *Buffalo Forge* did not overrule *Eazor Express* and that Republic is thus entitled to a trial on the merits on the question of whether defendants discharged their "reasonable efforts obligation." We agree that *Eazor Express* has not been overruled. However, *Buffalo Forge and U. S. Steel II* together must be read as limiting the application of *Eazor Express* where the strike is a sympathy strike. Where there is no obligation not to engage in a sympathy strike, there can be no union liability for failure to exert reasonable efforts to end a sympathy strike.

■ In this case defendants have admitted that the stranger pickets were members of the international organization, the United Mine Workers of America. We believe that the rationale of *Eazor Express* may impose some obligation on the international union to prevent the spread of illegal, wildcat strikes by its members to other employers like Republic with which the international union has contracted.

■ Collective bargaining agreements impose a continuing day-to-day obligation on the parties to fulfill their terms in good faith. *Curtis-Wright Corp., Wright Aero. Division v. N. L. R. B.,* 347 F.2d 61, 68 [3d Cir. 1965]. As stated in *Eazor Express* at p. 960:

"A no-strike agreement would be illusory indeed were a union to be permitted to avoid all responsibility under it for the duration of a prolonged strike which was being carried on by the concerted action of all its members employed in the struck operation, merely because the strike was not initially authorized or called by the union as an organization or by those of its officers who were specially empowered to do so. Rather than to construe a contract as producing such a result, the courts will favor a construction making the mutual promises binding and giving the contract legal effect. 1A *Corbin on Contracts,* 8–9; 3 *Corbin on Contracts* 168–171; 17 Am.Jur.2d 452."

■ Courts may not, of course, remake the parties' contracts and declare an implied obligation without a basis in the express provisions of the contract. *Eazor Express, supra,* at 960. Article XXVII of the National Bituminous Coal Wage Agreement of 1974, which applies to this dispute, requires the parties "to maintain the integrity of this contract." Judge Gibbons found this provision a sufficient basis for implying an "all reasonable efforts" obligation on the part of the union in *U. S. Steel I, supra,* 534 F.2d 1063 at 1073.

■ We are cognizant of the Supreme Court's admonition in *Buffalo Forge* that the assumption of several courts that a mandatory arbitration clause implies a commitment not to engage in sympathy strikes is wrong. However, as we have noted, *Buffalo Forge* involved the question of whether such strikes are enjoinable pending the arbitrator's determination of whether they violate the contract. We do not take this comment to mean that the contract may

not ultimately be determined to prohibit sympathy strikes or that the employer may not prevail in a claim for damages. Courts simply may not assume on the basis of a mandatory arbitration clause that sympathy strikes are prohibited.

While we find the possibility of a breach of contract by the international union, the local and district unions are in a different position. Here, as in *U. S. Steel II,* there is no dispute between the local union and the employer that is subject to arbitration and the complaint should be dismissed as to them. The difference in treatment of the international union from the local and district unions results from the fact that the "stranger. pickets" were admittedly members of the international. There is no allegation or offer of proof that would show the pickets to be members of District 5, Sub-District 3, Local 9873 or Local 688. We do not perceive any legal authority or obligation on the part of the local and district unions to control the conduct of UMWA members who are members of other union subdivisions. The UMWA, on the other hand, has contracted with Republic and owes Republic an obligation to "maintain the integrity of the contract."

We need not define that obligation precisely at this time, and to do so might impinge on the function of the arbitrator should arbitration be appropriate. We are presently considering a motion for summary judgment, and we hold now only that there exists a material question of fact as to whether the UMWA has fulfilled its contract, which precludes a summary judgment of dismissal as to UMWA.

Finally, the parties have assumed that the question of damages is for the court. In view of the agreement of the parties to arbitrate differences arising under the contract, and the well established policy that

> "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application of interpretation of an existing collective bargaining agreement", *Gateway Coal Co. v. United Mine.Workers,* 414 U.S. 368,

377, 94 S.Ct. 629, 636, 38 L.Ed.2d 583 [1974],

the Court believes consideration should be given as to whether this suit for damages should properly be considered by the court or whether it should be sent to arbitration. Because the posture of this case may take it out of the grievance-arbitration clause, which would usually be invoked in the context of an individual grievance involving a member of the local union, we will not *sua sponte* require arbitration without a specific motion raising this question and an opportunity for briefing and argument.

### ORDER

AND NOW, March 21, 1977, the Motion of Defendants for Summary Judgment is GRANTED as to Defendants United Mine Workers of America, District No. 5; United Mine Workers of America, Sub-District No. 3; United Mine Workers of America, Local No. 9873; United Mine Workers of America, Local No. 688; Gerald Abbott; Theodore Spazok; Peter Trbovich; Nick Paskovich; and Robert Famularo, and the action against them is DISMISSED.

The Motion of Defendant International Union, United Mine Workers of America is DENIED.

The Motion is DENIED as to the unidentified Defendants John Doe and Richard Roe.