FRASER SHANNON *vs.* GEORGE R. DOW.

Somerset.     Opinion, December 11, 1934.

*Fred H. Lancaster,*
*Lloyd B. Stitham,* for plaintiff.
*D. I. Gould,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J.    Action of negligence to recover for injuries result-ing from the accidental discharge of an improvised cannon. At the

trial before a jury, the plaintiff recovered a verdict. The case comes forward on the defendant's general motion.

The defendant, George R. Dow, is the owner and proprietor of a public garage in East Cornith, Maine. In the late evening of July 3, 1932, in preparation for the Fourth of July celebration of the next day, several pounds of black gun powder and a small quantity of yellow powder were brought into the garage and put in cans. Later, a cannon made out of the drive shaft of an engine was produced and at midnight and during the next hour it was repeatedly loaded in the garage, taken outside and fired. The last time the cannon was loaded, it exploded, setting the garage on fire and injuring those who were in the building.

The plaintiff, Fraser Shannon, a resident of Pittsfield, Maine, told the jury that on the day before this Fourth of July he brought his wife and children over to East Corinth to visit the family of one Alfred Jackson. They arrived in the forenoon, stayed into the evening and, deciding to remain overnight, he drove his automobile to the defendant's garage for storage. Finding the entrance blocked by a truck, he got out of his car, went to the rear of the garage in search of a toilet, spent a little time there finding a gauge he had dropped, returned to the front door, waited until the entrance was cleared, and drove his car into the garage, down the right side and to the back almost against a work bench along the wall. He says he then got out of his car and started towards the front entrance but turned and, going back to his car, hid some of his tools, arranged other articles which had been left in the car, and stepping off the running board, had started to walk around a puddle of water when there was an explosion which hurled him to the floor and rendered him unconscious. When he regained his senses, his left leg was useless and he was unable to rise. The rear of the garage was in flames. His outcries brought men to his assistance who helped him out and across the street where he was given first aid by the local physician. The plaintiff insists that he does not know what caused the explosion by which he was injured. He testifies that as he went back to his car to hide his tools he saw a man over in the left rear corner, of the garage with what appeared to be a broomstick in his hand standing over something, but he was not acquainted with the man and did not see what he was doing.

The physician who attended the plaintiff states that a piece of metal was driven through the front of the plaintiff's left leg severing the muscles and shattering the bone. His pants were badly burned below the knees, the left leg being in shreds. The plaintiff was blackened in places over the face, neck and body. His injuries were such that he was sent to the Eastern Maine General Hospital where his leg was kept in a cast twenty-seven days, and then amputated above the knee. He stayed in the hospital twelve weeks. At the time of the trial, he had been fitted with and was using an artificial leg.

A fifteen-year-old boy named Jack Brown describes the explosion, its causes and some of the incidents which led up to it. This witness apparently is wholly disinterested. He testifies that after he came down to the village that night a bag of black gun powder was brought into the defendant's garage, taken out, rolled fine and put in cans. About a pint of yellow powder was also brought in and left with the black powder in the back corner of the garage, both being used to load a so-called cannon which was fired from time to time during the night and before the accident. He says that after the celebration had been going on for a time he went across the street to a bowling alley, where one Morris Towne proposed that they load the cannon again and they returned to the garage. Towne went in first, poured powder into the cannon and started to drive the wadding in with a piece of iron which he hit with a sledge hammer. This witness says that when he entered the garage there was no one in there except Towne and himself, but while the cannon was being loaded a man came in and went over back in the direction of the bench. The testimony of this boy, when carefully analyzed, shows that he does not know what the man did after he went to the bench. He thinks the man came back and stood a few seconds or minutes, but on further examination says, "I didn't notice what he did." This statement appears to be the full measure of his knowledge on this point. Being asked, "Then what happened?" the boy replied, "The cannon exploded," and states that the garage burst into flames and, not being seriously injured, he ran out the back door to his home without stopping to see what happened to the other man. While he does not identify the man who came into the garage just before the cannon exploded, the coinci-

dence of circumstances points to the plaintiff as the man the boy saw.

The young man, Morris Towne, who was driving the wadding into the cannon when it exploded, died from his injuries without making any statement as to what happened. The remaining witness for the plaintiff is his wife. She confirms his claim that he took his car down to the defendant's garage for storage a little while before midnight and says that he was with her up to that time during the evening. She did not see him again after he left the house until he was injured and has no knowledge of what happened at the garage. She describes his injuries, suffering and present incapacity.

The defendant admits that he permitted the gun powder and cannon to be brought into and used in his garage that night, but charges the plaintiff with full knowledge of its presence and goes so far as to say that the plaintiff was helping load it himself when the explosion occurred and he was injured. He claimed that a little while before the explosion the cannon was fired outside and the plaintiff helped him load it. He told the jury that sometime after half past twelve he took what powder remained out of the garage and put it back of a small building at the rear, came in the back door and, seeing Morris Towne and the plaintiff apparently loading the cannon, asked them to take it out of the garage as he wanted to close up, went outside to sell some gas and left them in the garage. He says that they brought the cannon out and fired it again. He claims that he then started for home and had gone about fifteen rods when he heard a noise, came back, looked in the garage and saw Towne and Shannon loading the cannon again. The explosion followed and the building caught on fire. He rushed in, found Towne and Shannon on the floor with their clothing afire, which he brushed out, and others having come in, gave his attention to the flames.

The defendant called numerous witnesses to corroborate his testimony. Several testified that the plaintiff was at the garage when the powder was brought in. Some said he rode in the automobile when they went to get it. Others said the plaintiff helped make a bomb and they saw him help load the cannon, getting cotton waste from the floor of the garage, wetting it and handing it

to the man who was putting in the wadding. But from the defense witnesses themselves came testimony that the plaintiff was not in the garage just before the explosion and, although the defendant claimed to have taken the powder out of the garage, his employee got a can of it to load a small cannon he was firing, and enough was left there to load the cannon when it exploded.

The plaintiff, in rebuttal, flatly denied the stories told by the defendant's witnesses. He said he was not down to the garage when the powder was brought in, did not go after it and had no knowledge it was there. He insisted that he did not make any bombs, nor did he see the cannon there, much less help load it. And it was brought out in cross examination of one of the witnesses for the defense that the explanation of the accident given by the plaintiff at the hospital was similar in all respects to the story he told on the stand.

There was evidence tending to show that there were at least twenty or twenty-five men and boys in and out of the defendant's garage taking part in this celebration. They came singly and in groups. Some went across the street to a bowling alley, while others remained in the garage or just outside. At times, there was a ring of people, as it is described, around the cannon when it was loaded, and at other times, a few persons handled it and were alone. A number of men and boys were present when the bombs were made and exploded. And it is argued on the brief that the situation was such that it is impossible for any one to remember just who took any particular part in the celebration and that the witnesses are mistaken who identify the plaintiff as the man who helped load the cannon and make the bombs. It is also pointed out that the witnesses who testified for the defendant in an attempt to prove that the plaintiff had knowledge of the presence of the gun powder and the use of the cannon in the garage were relatives, an employee, patrons and friends of the defendant, some of whom had talked the case over among themselves and with others, and in some instances, with doubtful opportunity for observation, recited the events of the evening with unusual exactness and concurrence. These matters were undoubtedly considered by the jury in weighing the conflicting evidence presented to them.

The law of the case is well settled. The proprietor of a public garage is bound to use reasonable care to keep his garage safe for all persons coming into it by invitation, express or implied, and if it is in any respect dangerous, he is bound to give such invitees warning of the danger. They are bound to exercise due care on their own part in their use of the garage. *Parker* v. *Portland Publishing Company*, 69 Me., 173; *Robinson* v. *Leighton*, 122 Me., 309; *Graham* v. *Ochsner*, 193 Iowa, 1196; *Campbell* v. *Sutliff*, 193 Wis., 370; 1 *Thompson on Negligence*, 904. A garage proprietor who permits gun powder to be brought in and deposited in his garage and used to load an improvised cannon brings himself within this rule.

The burden was upon the plaintiff to sustain the allegations of his writ by the weight of the evidence. His witnesses were far outnumbered by those brought in by the defendant and contradicted in many of the material facts stated in their testimony, but they were believed by the jury. The weight of evidence is not a question of mathematics. One witness may be contradicted by several and yet his testimony may outweigh all of theirs. The question is what is to be believed, not how many witnesses have testified. *Chenery* v. *Russell*, 132 Me., 130; *Ladd* v. *Bean*, 117 Me., 445. The verdict of the jury rested upon disputed facts and was dependent on the credibility of witnesses. It is not made to appear that it resulted from bias or prejudice. It is not the province of this Court to set it aside on a general motion. *Chenery* v. *Russell*, supra; *Sheriff* v. *Murray*, 121 Me., 599.

It is not claimed that the verdict is excessive. On the case presented, the defendant is not entitled to a new trial. The entry is

*Motion overruled.*