Haddon, Appellant, *v.* Lotito.

522

Argued March 17, 1960.   Before JONES, C. J., MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Lawrence L. Davis*, with him *Davis & Davis*, for appellants.

*Edward F. Peduzzi*, with him *Myers, Taylor & Peduzzi*, for appellee.

OPINION BY MR. JUSTICE EAGEN, May 4, 1960:

The plaintiffs, Sarah Haddon, James Haddon and Andrew Brunnet, were injured while attending and witnessing a public fireworks' display at a public picnic-park on July 4, 1956.   An action in trespass against the defendant, producer of the exhibition, resulted at trial in the entry of a compulsory nonsuit which the lower court en banc refused to remove.   The correctness of this ruling is now before this Court on appeal.

It is well established that a compulsory nonsuit should be entered only in a very clear case and that the suing party or parties must be given the benefit of all the evidence and inferences therefrom favorable to their cause: *Gift v. Palmer*, 392 Pa. 628, 141 A. 2d 408

(1958). The record must, therefore, be read in this light.

The defendant, under contract with St. Joseph's Parish, Portage, Pennsylvania, produced the fireworks' display as one of the attractions at a church picnic. The injured plaintiffs visited the park for the purpose of viewing the display. They arrived together at the park about ten minutes after eleven o'clock at night when the exhibition was nearly over, and it was during the climax, or grand finale, of the show that the unfortunate accident occurred. Counsel for the plaintiff-appellants argue that under the evidence the latter are entitled to recover and that the defendant's liability is established on any one of three theories: namely, (1) absolute liability; (2) exclusive control; (3) defendant's negligence.

This is a case of first impression. However, in Pennsylvania it is established that one who carries on an ultrahazardous activity is liable for injury to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity, when the harm results thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent it. This is known as the doctrine of absolute liability: *Federoff et ux. v. Harrison Construction Company,* 362 Pa. 181, 66 A. 2d 817 (1949); Restatement, Torts, §§519, 520. This doctrine has been applied in blasting operation cases and in other instances wherein harm was done by parties who so misused some private rights of their own as to have exposed the person or property of others to unreasonable risks of danger. However, a public fireworks' display, handled by a competent operator in a reasonably safe area and properly supervised (and there is no proof to the contrary herein), is not so dangerous an activity. Other jurisdictions have so ruled and common experience supports this conclusion.

Where one discharges fireworks illegally or in such a manner as to amount to a nuisance and causes injury to another, some jurisdictions have held that liability follows without more: *Gerrard v. Porcheddu,* 243 Ill. App. 562 (1927) ; *Doughty v. Atlantic City Business League,* 80 Atl. 473 (1911). But the production of a public fireworks' display, under the circumstances presented herein, is neither illegal nor a nuisance and, consequently, liability, if existing, must be predicated upon proof of negligence: *Crowley v. Rochester Fireworks Company,* 183 N.Y. 353, 76 N.E. 470 (1906) ; *Dowell v. Guthrie,* 99 Mo. 653, 12 S.W. 900 (1890) ; *Shannon v. Dow,* 133 Me. 235, 175 Atl. 766 (1934). The doctrine of absolute liability does not apply.

The same may be said with equal force in regard to the doctrine of exclusive control. The elements necessary to bring a situation within the purview of this rule were set forth with great care in Mr. Chief Justice STERN's opinion in *Mack v. Reading Company,* 377 Pa. 135, 103 A. 2d 749 (1954). The doctrine in effect places upon the defendant the burden of rebutting an inference of negligence by a satisfactory explanation. Negligence is not presumed in such cases from the mere happening of the accident. It is the unusual character of the attendant circumstances which constitute evidence from which the existence of negligence may be inferred by the jury. Application of this doctrine is necessarily limited to cases where the evidence of the cause of the unusual accident is peculiarly or exclusively within the possession of the defendant and not equally available to both parties. Mere difficulty of obtaining evidence as to the cause of the accident is not, of itself, sufficient to warrant application of the rule. The nature of the occurrence must be so unusual that an inference reasonably follows that it would not have happened except for the operator's failure to exercise

due care. In other words, the accident must be of such a nature that it would not likely have occurred unless negligence existed. This does not mean that it is enough for the plaintiff to show that one of the possible causes of the accident could be the defendant's negligence; rather, the doctrine is applicable to a situation where, in the light of human experience, the accident was such as almost invariably occurs because of negligence on the part of the person in control of the operative instrumentality.

These elements are not present in this case. The accident was not of such a nature that it can confidently be assumed, in the absence of proof, to have been due to defendant's negligence. Consistent with the record in this case, it could, we feel, just as reasonably be concluded that the unfortunate occurrence is owing to latent defects in the fireworks themselves, a situation for which the defendant would not be legally answerable.

The only questions of merit are whether or not sufficient facts were proven to sustain a finding of defendant's negligence and, if sufficiently shown, whether the plaintiffs accepted and assumed the risks involved. The producer of a public fireworks' exhibition is duty bound to use the care and prudence of a reasonably prudent and intelligent man in providing a reasonably safe place for the spectators and in protecting them from unnecessary risks of harm. In other words, he is liable only if he fails to exercise reasonable care. The mere happening of an accident at such an exhibition is not proof of negligence and, of course, negligence is never presumed. This is the rule universally followed in other jurisdictions. See cases cited, 35 C.J.S. §10, pp. 245, 246; 4 Shearman & Redfield on Negligence, §762, pp. 1745, 1746; 22 Am. Jur., §§62, 63. The care required is similar to that expected of an individual who maintains a place of amusement for admission to

which a price is charged. Such a party is not an insurer but he must use reasonable care in the construction, maintenance and management of it, having regard to the character of the exhibitions given and the customary conduct of the patrons invited: *Schentzel v. Philadelphia National League Club*, 173 Pa. Superior Ct. 179, 96 A. 2d 181 (1953).

Do the facts established by the evidence indicate that the defendant failed in his duty? We think not. When the plaintiffs arrived at the park, they joined the spectators and took up a standing position on the rear fringe of the crowd, approximately one thousand feet distant from the point where the display was being set off. The proof of negligence to sustain the action must be gleaned entirely from the testimony of one of the plaintiffs, who described the situation in this manner, ". . . we arrived . . . and they started sending these great big salutes up, these big rockets, . . . they go up and bust and make all kinds of beautiful stars, and they give a big loud thud and then they give a final grand salute. I would say there must have been roughly about twenty of those large ones in those grand salutes and they just thumped and busted all over and some of them hit the ground in among us and busted up. . . . Some of them, instead of going away up and busting away up, they just went up a little way, part way up, and then they came right back down and started busting among us. . . . They seemed to be getting lower and lower instead of staying high. . . . They seemed to be bursting closer to the ground. . . . It seemed practically above our heads. . . . Some of them already hit in front of us on the ground and people were hollering and crying and screaming." Finally, someone yelled, "Run: they are going to hit the ground" and almost instantly one of the rockets came down and exploded between the feet of Sarah Haddon and Andrew Brunnet, who were standing close

together. As a result of the explosion, these two plaintiffs were thrown to the ground, stunned, temporarily blinded and seriously injured. Andrew Brunnet was hospitalized for six days, and Sarah Haddon for thirty-one days.

These facts, by themselves and when given the benefit of all inferences favorably deducible therefrom, clearly lack the probative weight required to make out a case of negligence or lack of care on the part of the defendant. Other facts, if they existed, were certainly necessary and within the possible range of plaintiffs' proof. The evidence presented amounts to no more than a showing of the happening of an unfortunate accident. What caused the occurrence is left to speculation and conjecture. It may have resulted from any of several causes. For instance and as pointed out before, defects in the fireworks themselves (about which the defendant perhaps lacked knowledge and had no reasonable opportunity to learn) might have caused the rockets to act in such an unexpected manner. The defendant would not be liable for injury so caused. There is not an iota of evidence in this record as to what caused the fireworks to fall in the area where the injured plaintiffs were standing. Similarly, there is not a trace of testimony tending to show that the falling of the rocket or rockets in the area where the spectators were standing occurred over any specific length of time; whether for seconds or for minutes the silence of the record on this point fails to disclose. In brief, the record is insufficient to sustain a conclusion that the operator or producer of the display had notice that something was amiss and that with such notice, despite a reasonable opportunity to remedy the situation or stop the exhibition, he failed so to do. Hence, there is no sound basis for a possible finding that it resulted from a negligent act or omission on the part of the defendant.

In view of our conclusion that the evidence was insufficient to prove actionable negligence, we find it unnecessary to discuss the question of plaintiffs' alleged assumption of the risks involved.

The judgment of the lower court is affirmed.

Mr. Justice BOK dissents.

----

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The plaintiffs in this case went to view a fireworks display and came away with wounds which could mark them as survivors of the Battle of Gettysburg. One of the plaintiffs described the bombardment as follows: "This large one (bomb) busted right—either busted in between us or right on our feet, and it throwed us down to the earth, and the impact, we couldn't see, we couldn't hear, we were blind, we thought our eyes were shot out and everything and we couldn't even get up off the ground, that's how stunned we were. That's the impact from the one that hit us. As I got a little bit of senses together I noticed her leg was all mangled and I hollered to my one brother-in-law . . . 'Jim, get Sarah, she's hit, and I'm hit too,' and he came back and got hold of her. He was in the process of running when they started exploding around us . . ."

The injured plaintiffs brought an action in trespass against James Lotito, the producer of the fireworks exhibition, and the lower court entered a nonsuit on the ground that they had not proved that the man who shot the fireworks was guilty of negligence. This Court has refused to lift the nonsuit.

In affirming the nonsuit this Court has imposed on the plaintiffs requirements of proof which are not justified by law. A pedestrian on the sidewalk who is knocked down by an automobile climbing the curb does not have to prove that the operator of the car was intoxicated or asleep or purposely ran him down. The

fact that the automobile was where it absolutely had no right to be is enough to place upon the motorist the burden of explaining how and why he was where he was. This salutary rule of law has been stated many times by this Court: "When the thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from a want of care." (*Kotal v. Goldberg*, 375 Pa. 397).

The Majority Opinion says: "The accident was not of such a nature that it can be confidently be assumed, in the absence of proof, to have been due to defendant's negligence. Consistent with the record in this case, it could we feel, just as reasonably be concluded that the unfortunate occurrence is owing to latent defects in the fireworks themselves, a situation for which the defendant would not be legally answerable."

Yes, there could have been latent defects in the fireworks but it was up to the defendant to exculpate himself from responsibility by showing that he exercised proper care under the circumstances.

It appears that at one point in the exhibition the bombs began to explode on the ground instead of in the air. Brunnet testified: "Well, as I said, as they sent these big ones up we seen some of them starting to fall short and they started dropping lower and lower and young James made the remark, 'Run,' he says, 'they are going to hit the ground,' and me and Sarah never got the chance to run, they hit that fast. Q. Did I understand you to say—I believe you said they were falling short, that they were exploding closer to the ground than you felt they should have been? A. Yes, they were coming down where they should have gone away up high, exploded up there in the air and throw-

ing those big fancy stars, etc., out. Q. And you saw several of them—A. Some of them already hit in front of us on the ground and people were hollering and crying and screaming."

When the bombs began to fall short, why didn't Lotito stop the firing and elevate the trajectory of the missiles? Why didn't he notify the spectators of the danger? What did Lotito do to avoid injuring the people who had every reason to assume that they would not be used as targets for the fiery assault?

A person who is invited to a pyrotechnical performance has the right to expect that he will not be shot at with Roman candles, that sky rockets will not drop on his head, that aerial bombs will not explode under his feet and that pin wheels will not roll to his immediate vicinity and there revolve to his disaster.

The Majority Opinion says that it is up to those who are injured to show that the cannoneer was negligent, but there can be no such burden on the plaintiff "where the evidence of the cause of the accident is not equally available to both parties but is peculiarly or exclusively accessible to and within the possession of the defendant." (*Mitchell v. Scharf*, 179 Pa. Superior Ct. 220).

A person who is injured while watching a fireworks display has no more facility of ascertaining what fault caused his injuries than a passenger on a railroad train can explain what precipitated the wreck which disabled him.

I believe that the nonsuit in this case should be lifted and the defendant held accountable under the following rules of law: "It is negligence in those responsible for the display of fireworks to fire or propel bombs or explosives into the air at such an angle that they will fall on a spectator standing where he is expected to stand to view the display, . . . ." 22 Am. Jur., Explosions and Explosives, §63. "It is action-

able negligence so to fire bombs that they will fall on a spectator standing where he is expected to stand to view a display of fireworks." 35 C.J.S., Explosives, §10.