[Civ. No. 38063. First Dist., Div. Two. Aug. 10, 1977.]

GEORGE RAMSEY, Plaintiff, Cross-defendant and Respondent, v.
MARUTAMAYA OGATSU FIREWORKS COMPANY, LTD., et al.,
Defendants, Cross-complainants and Appellants;
KYOSUKE OGATSU, Defendant, Cross-complainant and Respondent;
R. BORGMAN SALES COMPANY, Cross-complainant and Appellant;
MICHAEL MARTUCCI et al., Cross-defendants and Respondents;
ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Intervener and Respondent.

MICHAEL MARTUCCI, Plaintiff, Cross-defendant and Respondent, v.
MARUTAMAYA OGATSU FIREWORKS COMPANY, LTD., et al.,
Defendants, Cross-complainants and Appellants;
KYOSUKE OGATSU, Defendant, Cross-complainant and Respondent;
R. BORGMAN SALES COMPANY, Cross-complainant and Appellant;
ROBERT SOUZA et al., Cross-defendants and Respondents;
ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Intervener and Respondent.

ROBERT SOUZA et al., Plaintiffs, Cross-defendants and Respondents,
v.
MARUTAMAYA OGATSU FIREWORKS COMPANY, LTD., et al.,
Defendants, Cross-complainants and Appellants;
R. BORGMAN SALES COMPANY, Cross-complainant and Appellant;
GEORGE RAMSEY et al., Cross-defendants and Respondents;
ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Intervener and Respondent.

520

## Counsel

Thacher, Jones, Casey & Ratcliff, James E. Ratcliff, Jr., James F. Thacher, Lance S. Stryker, O'Connor, Cohn, Dillon & Barr and James L. English for Defendants, Cross-complainants and Appellants and for Defendant, Cross-complainant and Respondent.

Shovlin & Babin, James P. Shovlin, Richard G. Logan and Norbert C. Babin for Cross-complainant and Appellant.

McCarthy & Perillat, Alexis J. Perillat, Goldstein, Barceloux & Goldstein, Burton J. Goldstein, M. Reed Hunter, Douglas Backeberg and William B. Boone for Plaintiffs, Cross-defendants and Respondents and for Cross-defendants and Respondents.

Hanna, Brophy, MacLean, McAleer & Jensen, Norman H. Abreu and Frank B. Hugg for Intervener and Respondent.

## Opinion

**ROUSE, J.**—In complaints charging negligence, breach of warranty, strict tort liability and violation of statute, plaintiffs, George Ramsey,

Michael Martucci, Robert Souza and Anthony Martin, sought damages from defendants for personal injuries sustained as a result of premature explosions of fireworks during a public display on the Marina Green in San Francisco on September 19, 1969. The defendants included the Marutamaya Ogatsu Fireworks Co., Ltd. (Marutamaya), Kyosuke Ogatsu (Ogatsu), the Japan External Trade Organization and Japan Trade Center (Jetro) and the San Francisco Chamber of Commerce (Chamber). The actions were consolidated for trial in the superior court. Following a nonjury trial, judgment was entered for each of the plaintiffs. Defendants now appeal from that judgment. After careful examination and consideration of the issues raised on appeal, we have concluded that the judgment must be affirmed.

The facts show that in September 1969, Jetro and Chamber jointly sponsored a festival entitled Japan Week. As a part of the event, a fireworks display was conducted on September 19, 1969, at the Marina Green in San Francisco. It was during the course of such fireworks display that plaintiffs sustained the injuries which gave rise to this lawsuit, when two separate six-inch fireworks shells exploded prematurely.

Jetro had contracted with Marutamaya, a Japanese corporation, for the manufacture and display of the fireworks. Marutamaya then contracted with R. Borgman Sales Co. (Borgman), pyrotechnicians, to conduct the display. Plaintiffs were all employees of Borgman and were experienced, licensed pyrotechnic operators. Plaintiff Souza had been with Borgman for 18 or more years and managed the public display division. His duties included the supervision of operators.

The fireworks were shipped by Marutamaya to Southern California, from whence they were delivered by an independent contractor, Delta Lines, to Borgman in San Leandro. On the day of their arrival, the fireworks were immediately transferred from Delta to a Borgman truck and taken by the latter to the Marina Green. There the packing cases were examined by Souza, who observed no visible damage. Plaintiff Martucci unpacked all six-inch shells, inspecting each for damage, but he found none. The six-inch shells were of a chrysanthemum design. Each contained a long fuse which ignited the lifting charge, which in turn would propel the shell out of the mortar into the air. The lifting charge would also start the time fuse as the shell was in the air. After the time fuse burned out, it would ignite the blasting charge, which caused the shell to explode and emit stars in the display.

The shells were fired from mortars provided by Borgman. During the procedure, each shell was placed in the mortar by the firing operator. There were two separate rows of mortars, fifteen for firing five-inch shells and fifteen for firing six-inch shells. When the display commenced, the six-inch firing team consisted of plaintiff Martucci as firing operator, plaintiff Ramsey as loading operator, and Merrill as magazine tender. The sequence was to alternate firing six-inch shells and five-inch shells. After a round of five-inch and six-inch shells had been fired, Ogatsu, the Marutamaya technician, fired a small battery of shells. Then a second battery, also a round of five-inch and six-inch shells, was commenced. The first battery of six-inch shells was completed without incident. During the second battery, plaintiff Martucci ignited a shell which exploded in the mortar, causing injuries to himself and to Ramsey. An ambulance was called for these injured plaintiffs.

After a lapse of five or ten minutes, Souza said to plaintiff Martin, "Let's finish the show for George [Ramsey]." Souza then assumed the position of loading operator, with Martin serving as firing operator. Souza did not inspect the remaining fireworks nor did he make any attempt to determine the cause of the explosion prior to resuming the firing; however, he did make a visual check of the mortars to determine if their position had been disturbed. Shortly thereafter, a second shell exploded in the mortar, causing injury to plaintiffs Souza and Martin. This litigation followed.

Plaintiffs' complaint alleged that Marutamaya was the manufacturer and supplier of the fireworks, that Ogatsu was the vice president of said company and was also present at the scene when the fireworks exploded, and that Jetro and Chamber had organized and arranged for the fireworks display. Each of the defendants denied the charging allegations of the complaint and raised the affirmative defenses of contributory negligence and assumption of the risk. Defendants Marutamaya and Ogatsu also cross-complained against plaintiffs and plaintiffs' employer, Borgman, seeking implied indemnity based upon theories of negligence, strict liability and violation of statute. Defendants Jetro and Chamber cross-complained against Marutamaya on an implied warranty, asserting that plaintiffs' injuries were proximately caused by the dangerous and defective condition of the fireworks and not by any primary fault on the part of Jetro and Chamber. Jetro and Chamber also cross-complained for indemnity against Borgman on the theory that Borgman's negligence in setting off the fireworks was active and primary, whereas Jetro and Chambers were allegedly liable only by virtue of the doctrine of respondent superior. All of the cross-defendants denied the charging

allegations of the cross-complaints and raised the affirmative defenses of contributory negligence and assumption of the risk.

At the conclusion of the case, the trial court made extensive findings of fact and concluded, as a matter of law, that plaintiffs were entitled to recover money judgments in the aggregate amount of more than $419,000 against Marutamaya, Jetro and Chamber; that Ogatsu was entitled to judgment against plaintiffs; that Marutamaya was entitled to judgment on its cross-complaint against Borgman in the amount of $300,000 plus its costs of defending the action; that Borgman was entitled to judgment in its favor as to all of the other cross-complaints for indemnity which had been filed against it; that Jetro and Chamber were entitled to indemnity from Marutamaya as to all amounts which plaintiffs had recovered against Jetro and Chamber.

Judgment was accordingly entered, and Marutamaya, Borgman, Jetro and Chamber have all appealed from those portions of the judgment which were unfavorable to them.

We consider first the arguments raised by Jetro and Chamber. These defendants point out that the trial court found that only one defendant, Marutamaya, was guilty of active negligence and further found that this negligence consisted solely of the faulty design and manufacture of the aerial bombs and Marutamaya's failure to take special precautions in connection with such design and manufacture. The trial court found that there was no negligence in connection with the operation of the fireworks display; that Borgman and its employees, and Ogatsu, who supervised the display on behalf of Marutamaya, had conducted this operation in an entirely proper manner. Jetro and Chamber contend that, under these circumstances, there is no legal basis for imposing liability upon them because, as the promoter or sponsor of a fireworks display, their only duty was to use reasonable care to provide the spectators with a safe place in which to view the exhibition and to use reasonable care in selecting skilled persons to furnish the fireworks and conduct the exhibition. These defendants assert that, since there is no evidence to support a finding that they failed to fulfill this duty (and the trial court made no such finding), they cannot be held liable for plaintiffs' injuries merely because Marutamaya, an established manufacturer of fireworks, negligently created a latent defect in the fireworks. Jetro and Chamber point out that they had no control over the manufacturing process and that they lacked the expertise necessary for the exercise of such control; further, that there was no evidence to suggest that, even with the exercise of reasonable care, they could have discovered the latent defect in the

aerial bombs. Given these facts, Jetro and Chamber contend that the trial court erred in holding them liable to plaintiffs merely because they organized and sponsored the fireworks display.

In response to this argument, plaintiffs contend that the trial court properly held Jetro and Chamber strictly liable for the faulty manufacture of the fireworks under principles which have been applied in products liability cases. They rely upon such cases as *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]; *Garcia* v. *Halsett* (1970) 3 Cal.App.3d 319 [82 Cal.Rptr. 420]; *McClaflin* v. *Bayshore Equipment Rental Co.* (1969) 274 Cal.App.2d 446 [79 Cal.Rptr. 337]; and *Kasel* v. *Remington Arms Co.* (1972) 24 Cal.App.3d 711 [101 Cal.Rptr. 314], as authority for the proposition that even bailors, lessors, licensors or others in the business of furnishing products for temporary use have been held strictly liable for latent defects caused by the manufacturer of the product. The cases are readily distinguishable from the case at bar, however. In each of those cases, the facts show that the defendant was "a link in the marketing enterprise which placed a defective product within the stream of commerce . . . .[¶] . . . It is the defendant's participatory connection, for his personal profit or other benefit, with the injury-producing product and with the enterprise that created consumer demand for and reliance upon the product . . . which calls for imposition of strict liability." *Kasel* v. *Remington Arms Co., supra,* at p. 725.) In this case, Jetro and Chamber were in no sense engaged in the business of distributing fireworks to the public. They were not a link in the marketing enterprise of Marutamaya's products, were not attempting to create consumer demand for such products and were not in a position to profit, either directly or indirectly, from the sale of Marutamaya's products. To the contrary, Jetro and Chamber were themselves the ultimate and final consumers of the products in question, which they had purchased for their own use in creating a public display. In their capacity as the final consumers of the fireworks, Jetro and Chamber fell within the class for which the doctrine of strict liability in tort was designed to protect and not within the class against whom the doctrine could be invoked. (*Dart Transportation Service* v. *Mack Trucks, Inc.* (1970) 9 Cal.App.3d 837, 847, 849 [88 Cal.Rptr. 670].)

Plaintiffs contend that even if the doctrine of strict liability in tort was inapplicable to the factual situation here present, Jetro and Chamber, nevertheless, were properly held liable for plaintiffs' injuries on a number of different theories. Inasmuch as we have concluded that one of

the theories advanced by plaintiffs is clearly applicable, we need not discuss the others.[1]

Section 423 of the Restatement Second of Torts provides that "One who carries on an activity which threatens a grave risk of serious bodily harm or death unless the instrumentalities used are carefully constructed and maintained, and who employs an independent contractor to construct or maintain such instrumentalities, is subject to the same liability for physical harm caused by the negligence of the contractor in constructing or maintaining such instrumentalities as though the employer had himself done the work of construction or maintenance."

In *Maloney* v. *Rath* (1968) 69 Cal.2d 442 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1], the California Supreme Court applied section 423 to impose liability upon a motorist whose brakes failed, causing her to collide with another car. The evidence established that the plaintiff herself was not negligent. She had had her brakes overhauled three months prior to the accident and subsequently had her car inspected for damage and repaired after another accident in the interim. Her brakes had given no warning of their impending failure. It was undisputed that the accident was caused by a failure of defendant's brakes that resulted from her independent contractor's negligence in overhauling or in thereafter inspecting the brakes. Nevertheless, the court held that improperly maintained vehicles threatened "a grave risk of serious bodily harm or death" within the meaning of section 423 of the Restatement Second of Torts, and that plaintiff was therefore liable for the damages caused by the collision. The court's reasoning is especially worthy of note: "The responsibility for minimizing that risk or compensating for the failure to do so properly rests with the person who owns and operates the vehicle. He is the party primarily to be benefited by its use; he selects the contractor and is free to insist upon one who is financially responsible and to demand indemnity from him; the cost of his liability insurance that distributes the risk is properly attributable to his activities; and the discharge of the duty to exercise reasonable care in the maintenance of his vehicle is of the utmost importance to the public. [Citations.] [¶] . . . Since her duty to maintain her brakes in compliance with the provisions of the Vehicle Code is nondelegable, the fact that the brake failure was the result of her independent contractor's negligence is no defense." (P. 448.)

---

[1]Plaintiffs' other bases for fixing liability upon Jetro and Chamber consist of the public franchise rule (Rest.2d Torts, § 428), the existence of a nondelegable duty arising from a statute or regulation (Rest.2d Torts, § 424), the special precautions rule (Rest.2d Torts, §§ 413, 416), and the principle of a nondelegable duty in carrying out work which is inherently dangerous (Rest.2d Torts, § 427).

Although, in this case, the trial court did not cite section 423 of the Restatement Second of Torts, it made findings which rendered that section applicable. For example, the court found that, in furtherance of their joint venture to hold a fireworks display as part of a trade promotion program, Jetro and Chamber contracted with Marutamaya for the latter to manufacture and supply fireworks which included aerial bombs containing highly explosive materials; that these bombs were inherently and abnormally dangerous and reasonably likely to cause severe injuries to persons in the immediate vicinity of their use in the event of a premature explosion; and that two of the aerial bombs did prematurely explode and cause such injuries due to Marutamaya's negligence in designing and manufacturing same.

Jetro and Chamber have not challenged these findings nor are they in any position to do so. The trial court's finding relative to the inherently and abnormally dangerous nature of the fireworks is in accord with section 12505 of the Health and Safety Code (§ 12503 at the time of the conduct here involved) which classifies as "dangerous fireworks" any which include picrates or gunpowder. Marutamaya's status as an independent contractor is likewise not in question; in fact, Jetro and Chamber have themselves so characterized Marutamaya in their brief.

Under these circumstances, the conclusion is inevitable that section 423 of the Restatement Second of Torts, and the reasoning of *Maloney* v. *Rath, supra,* 69 Cal.2d 442, is controlling. Jetro and Chamber were carrying on an activity (the fireworks display) which threatened a grave risk of harm or death unless the instrumentalities used (the fireworks) were carefully constructed. Thus, their conduct in hiring an independent contractor (Marutamaya) to manufacture the fireworks did not insulate them from liability for the physical harm caused by Marutamaya's negligence in manufacturing the fireworks.

Jetro and Chamber challenge the applicability of *Maloney* v. *Rath* on the basis of the holding in *Clark* v. *Dziabas* (1968) 69 Cal.2d 449 [71 Cal.Rptr. 901, 445 P.2d 517], a case decided the same day as *Maloney*. They contend that *Clark* limited the rule of the *Maloney* case to situations other than those involving a manufacturer's defect in a product. We have concluded, however, that their position is unsound. In the *Clark* case, which also involved an automobile collision caused by a brake failure which occurred without warning, the court pointed out that, unlike the situation in the *Maloney* case, there was no evidence that either of the two independent contractors, who had worked on the defendant's car prior to the accident, had been guilty of any negligence

which had caused the brake failure. The court then went on to state that upon retrial, the defendant should be afforded the opportunity to prove, if he could, that the defect in the brakes existed when he purchased the car, that he could not have discovered the defect by a reasonable inspection, and that the situation was one where neither the defendant nor the agents he had employed to maintain the car had acted negligently in violation of the defendant's nondelegable duty to maintain the car with reasonable care.

The *Clark* language has reference to a simple vendor-purchaser situation where the purchaser unknowingly buys a product with a preexisting defect. As between a vendor and a purchaser, the former is not the agent of the latter, so there is no basis for holding the purchaser liable for the negligence of the vendor. This case involves a distinctly different situation where Jetro and Chamber employed Marutamaya, as their independent contractor, to manufacture fireworks of a type which created a grave risk of serious bodily harm in the absence of careful manufacture. We conclude that such situation is governed by section 423 of the Restatement Second of Torts and by *Maloney* v. *Rath, supra,* 69 Cal.2d 442, rather than by the language of the *Clark* case (69 Cal.2d 449). Having set out upon a venture which they knew could involve grave bodily injury unless reasonable care was exercised in the manufacture of the fireworks, Jetro and Chamber were not entitled to delegate their responsibility to exercise such care. Applying the reasoning of *Maloney,* we find that Jetro and Chamber were the ones primarily to be benefited by the fireworks display, and they had every opportunity to protect themselves by selecting an independent contractor who was well qualified in his field, who was financially responsible and who could be required to indemnify them.

■ ■■■ Jetro and Chamber contend that plaintiff Souza was barred from recovery either on the theory that he was contributorily negligent or that he assumed the risk that he would be injured by the premature explosion of the fireworks.[2] Jetro and Chamber base their

[2]This argument is premised upon the assumption that the fireworks display, although inherently and abnormally dangerous in the event of a premature explosion, was not an ultrahazardous activity. Jetro and Chamber have casually interjected the suggestion that this court might determine that the fireworks display did constitute an ultrahazardous activity and that all four plaintiffs, by knowingly participating therein, were barred from recovery. (*Luthringer* v. *Moore* (1948) 31 Cal.2d 489, 499 [190 P.2d 1].) We think they are not serious in their pursuit of this argument in light of a statement made earlier in their brief: "Although there is no reported California case directly in point, it would appear that a public fireworks display is not an ultrahazardous activity. In *Mathews* v. *City of Albany* (1939) 36 Cal.App.2d 147 [97 P.2d 266], the Court found contributory negligence as a matter of law. There is no explicit discussion as to

argument upon the following evidence: Plaintiff Souza was a licensed pyrotechnic operator and on September 19, 1969, was the Borgman operator in charge of the display. He was present when the first aerial bomb prematurely exploded within the mortar, causing serious injuries to plaintiff Ramsey. Souza testified that the first explosion was a detonation which could have been caused by a defect in the time fuse or a leak in the shell. Despite this knowledge and despite the fact that it was Souza's responsibility to discontinue the show after the first explosion if there was danger that a second one would occur, Souza assumed Ramsey's job as loading operator and the show was continued. The second explosion, which resulted in the injuries to Souza, occurred upon the lighting of the second or third shell following the first explosion.

Jetro's and Chamber's summary of the evidence is somewhat incomplete. Although Souza did testify that the first premature detonation *could* have been caused by a defect in the time fuse or a leak in the shell, he also stated that he did not know what caused the detonation. Even if Souza had reason to suspect that the first explosion was caused by a defect in the manufacture of the shell, we think that it is significant that some 30 to 35 shells had previously been fired without incident prior to the first detonation; thus, it was entirely reasonable to believe that the remaining shells were free from any defect. Plaintiffs' expert witness, Mr. Thomas Fisher, whose deposition was read into evidence, testified that very few shells of any manufacturer ever prematurely detonated within the mortar; that he would not expect to find 1 defective shell in 100, and that it was more probable that he would not find 1 defective shell in 200 or 300. George Ramsey testified that in his 10 years of experience in pyrotechnics, he had never known a shell to detonate in this manner. Anthony Martin, who had worked as a pyrotechnic operator for 10 years,

---

whether a fireworks display is an ultrahazardous activity, but the finding implies a negative answer since contributory negligence is not a proper defense to absolute liability." Jetro and Chamber also point out in this portion of their brief that in *Hadden* v. *Lotito* (1960) 399 Pa. 521 [161 A.2d 160, 81 A.L.R.2d 1199], the Pennsylvania Supreme Court expressly held that a public fireworks display was not an ultrahazardous activity, and that in *Orser* v. *George* (1967) 252 Cal.App.2d 660, 672 [60 Cal.Rptr. 708], the California appellate court held that the discharge of firearms was not an ultrahazardous activity.

We agree that a fireworks display is not an ultrahazardous activity. In *Smith* v. *Lockheed Propulsion Co.* (1967) 247 Cal.App.2d 774, 785 [56 Cal.Rptr. 128, 29 A.L.R.3d 538], the court quoted with approval from section 520 of the Restatement of Torts: " 'An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage.' " In this case, the evidence and the trial court's findings demonstrate that the risk of serious harm from the discharge of fireworks such as the aerial bombs was one which could have been eliminated had the fireworks been manufactured by Marutamaya in a nonnegligent manner. In addition, fireworks displays are a matter of common usage on appropriate occasions such as the Fourth of July.

had witnessed only one premature detonation. In the course of 25 prior shows in which he had worked, Steve Merrill had also seen only one such detonation. In Merrill's opinion, it would have been a useless act to reinspect the shells after the first explosion because "the best determination possible had been done before the show was even begun. . . . What wasn't obvious the first time, wouldn't be obvious the second time." Merrill testified that Souza did, in fact, inspect the mortars to see if they were damaged and that he determined that they were safe and had not been disturbed. Merrill did not consider that the premature detonation of 1 shell after 30 or 35 others had been fired without incident was sufficient cause for stopping the show. Mr. Ogatsu, Marutamaya's representative at the scene, concurred in Souza's decision to continue the show. He testified at his deposition that he had told Souza that it was not possible that there could be a defect in the shells manufactured by Marutamaya. Ogatsu also testified at his deposition that none of the shells manufactured by Marutamaya had ever exploded within the mortar before or after the incidents which are the subject of this action.

■ No citation of authority is required for the proposition that the existence of contributory negligence and assumption of the risk is a question of fact for the trial court. In this instance, the trial court found that Borgman and its employees were not negligent in the operation of the fireworks display; further, that none of the plaintiffs were guilty of negligence which contributed to their injuries or had any of them assumed the risk of said injuries. On the record before us, we cannot say that these findings were unsupported by substantial evidence. Accordingly, we reject Jetro's and Chamber's claim that Souza was barred from recovery as a matter of law, either by contributory negligence or by assumption of the risk.

■ Marutamaya contends that it was deprived of a fair trial because it was not allowed to produce any expert testimony. The record reveals that the trial commenced on September 16, 1974, and that on September 19, in response to a question by the trial court, Marutamaya's counsel stated that Mr. Ogatsu, who, it appears, would have been able to give expert testimony concerning the cause of the premature detonation of the aerial bombs, did not intend to leave Japan to attend the trial. Counsel for Marutamaya advised the court that he had called Mr. Ogatsu on the evening of September 16, but that he had indicated that he was unwilling to attend. Counsel had sent Ogatsu a cablegram on the morning of September 17, urging him to reconsider, but had received no reply. Plaintiffs' counsel was then allowed to read into evidence Ogatsu's deposition which had been taken by the other parties. Counsel for

Marutamaya objected to the introduction of the deposition, but the objection was overruled. The contents of the deposition pertained almost entirely to factual matters, such as the negotiations for the manufacture of the fireworks and the events which had occurred on the night of the display. Ogatsu stated that he had observed that certain shells had been placed in the mortars upside down.

Plaintiffs then produced a deposition of their expert witness, Thomas Fisher, which had been taken by defendants. Plaintiffs were permitted, over Marutamaya's objection, to read this deposition into evidence on the ground that Fisher was unavailable to attend the trial because he was badly crippled by arthritis and gout. In the deposition, Fisher expressed the opinion that the premature detonations could only have been caused by a defect in the shells or a defect in the time fuses. He had conducted tests with aerial bombs manufactured by Marutamaya and had established that firing the shells in an upside down position would not cause a premature detonation such as had occurred during the fireworks display held on September 19, 1969.

By September 25, plaintiffs had concluded their case, with the exception of two medical witnesses. At this point in trial, the court inquired of counsel for Marutamaya, "What about the question of an expert?" Counsel replied that he had the names of both experts whom he planned to call as witnesses. He stated that one would testify from a "technical aspect" and the other from a "practical aspect." The court then made various inquiries of counsel for Marutamaya as to when he had first attempted to find expert witnesses. The trial had originally been set for April 29, 1974, but had been delayed for five months for a reason not specified in the record. Defendants learned at the earlier trial date that Mr. Ogatsu, a codefendant, would not be able to come to the trial at that time due to an accident in his factory. Counsel had originally intended to rely upon Mr. Ogatsu to testify at the later trial date as to technical data concerning fireworks. Defendants did not inquire further of Mr. Ogatsu until the 16th of September, one day before trial. At that time counsel telephoned Mr. Ogatsu, who indicated he would not come. Counsel stated to the court that he did not begin to look for either of the two experts until he learned that Mr. Ogatsu would not attend the trial.

The judge indicated his concern with the unfairness to plaintiffs in allowing the experts to testify at this point. Counsel for Marutamaya then furnished the court with the names of the two expert witnesses he was desirous of calling, and he described their qualifications. When the court inquired as to their availability for depositions, Marutamaya's counsel

stated that the witnesses would be available the following weekend or Monday, and stated that he thought both witnesses could be deposed in one morning. The court then inquired as to the nature of the testimony which the experts would give. Counsel replied that they would testify as to the cause of the detonations and to the fact that they were not necessarily the result of manufacturing defects, as described by Mr. Fisher, plaintiffs' expert; that they could have resulted from misloading of the mortars. Counsel for Marutamaya admitted, however, that neither expert was a pyrotechnician.

Counsel for Marutamaya could offer no reason why Mr. Ogatsu could not attend the trial after a five months' delay. The court found that, in the absence of any explanation, there was no good cause shown for Ogatsu's absence. The court pointed out that the experts proposed by counsel had not conducted any experiments, had reviewed no technical data from Marutamaya, the manufacturer, had not examined a six-inch chrysanthemum shell of the Marutamaya manufacture, and had not seen a mortar. The court therefore denied the motion to produce expert testimony.

Marutamaya contends that the trial court's ruling effectively deprived it of any viable defense and left the court with no reasonable alternative but to decide the case in accordance with the testimony of plaintiffs' expert, Mr. Fisher, who was not available at the trial to be cross-examined. They also argue that the reasoning behind the court's ruling was unsound insofar as the court repeatedly alluded to Ogatsu's unexplained absence and the alleged unfairness to the plaintiffs.

Plaintiffs argue several points in response: first, that Marutamaya was not entitled to produce the proposed expert witnesses because Marutamaya had answered a pretrial interrogatory, stating that Ogatsu was the only expert witness who would be called; second, that to allow Marutamaya to produce new experts after plaintiffs' case was nearly completed would not have afforded them an adequate opportunity to make discovery or to prepare for rebuttal; third, that the trial court's ruling was proper because Mr. Ogatsu's absence at the trial was not adequately explained and because counsel for Marutamaya unreasonably delayed in obtaining other experts after it became clear to him that Ogatsu would not appear and testify; fourth, that Marutamaya did have the benefit of expert testimony by Ogatsu, since plaintiffs read his deposition into evidence at trial; fifth, that Marutamaya failed in its offer of proof to establish that its proposed experts could give testimony which would amount to more than mere academic speculation. F..ally,

plaintiffs rely upon the rule that a trial court has discretion to limit the number of expert witnesses in any case.

Plaintiffs' contention that Marutamaya had the benefit of Ogatsu's expert testimony because plaintiffs introduced his deposition is inaccurate. The deposition pertained almost exclusively to factual matters and not expert opinions. Although Ogatsu did make factual statements that he had observed several shells which had been placed in the mortars upside down, Fisher rather conclusively demonstrated that this could not have been the cause of the premature detonations. Since the Ogatsu deposition cannot properly be characterized as expert testimony, defendants did not have the benefit of Ogatsu's expertise at trial by means of the deposition.

The interrogatory in which plaintiffs allege that Marutamaya represented that it would call no expert witnesses other than Ogatsu merely asked for the names of "any and all persons known . . . to have expressed an opinion with respect to the causes of the subject accident." Obviously, this interrogatory cannot be interpreted as a request that Marutamaya disclose the names of all expert witnesses whom it intended to call at the trial. There are no orders or stipulations in the record limiting or restricting Marutamaya to Ogatsu as its sole expert witness nor orders or stipulations requiring Marutamaya to disclose prior to trial the identity of the experts whom it intended to call as witnesses. Marutamaya points out that plaintiffs were themselves entitled by court order to produce experts without five days' notice if they made them available for deposition. Thus, Marutamaya cannot be said to have limited itself in its selection of expert witnesses. However, the trial court may, in its discretion, limit the number of expert witnesses a party may call.

Marutamaya cites a number of authorities for the proposition that a party is entitled to have received in evidence and considered by the court all competent, material and relevant evidence which tends to prove or disprove any material issue raised by the pleadings. (*Ponce* v. *Marr* (1956) 47 Cal.2d 159, 163 [301 P.2d 837]; *Estate of Horman* (1968) 265 Cal.App.2d 796, 808-809 [71 Cal.Rptr. 780]; *Cal. Home Extension Assn.* v. *Hilborn* (1951) 37 Cal.2d 459, 464-465 [235 P.2d 369].) We have no quarrel with these authorities or with the principles enumerated therein; however, the evidence offered by Marutamaya was not that of pyrotechnicians. Since the witnesses had never seen samples of Marutamaya shells, nor conducted physical experiments, they could only have answered hypothetical questions about the explosive devices used. Such

testimony would have been of little value in ascertaining whether the Marutamaya shells were suffering from design or manufacture defects.

Moreover, plaintiffs have demonstrated at length that they would suffer unreasonable prejudice by not being able to prepare for the testimony of these experts. As counsel for Marutamaya indicated on Wednesday of the trial, one of the experts it wished to call could not be deposed until the following weekend or that next Monday. Plaintiffs explain, "To depose the new experts, wait for transcription, and then review the depositions with Mr. Fisher [plaintiffs' expert] would have caused considerable delay. In addition, plaintiffs would have been faced with the problem of either obtaining a second deposition from Mr. Fisher or persuading him to attend the trial notwithstanding his disabilities [illness]. Effective rebuttal under the circumstances was highly unlikely."

Finally, we find that there is an even more compelling reason to uphold the trial court's ruling on this question: Marutamaya knew, or certainly should have realized from the allegations of the complaint and the nature of the action, that there was a potential issue of defective construction which would require expert testimony. Their failure to secure any expert witness for trial other than Ogatsu, who lived in Japan and had earlier refused to come, indicates an utter lack of diligence. Marutamaya had an affirmative duty to have Ogatsu present or arrange for another expert before trial. Thus, we conclude that Marutamaya was not unjustly denied the use of the two additional expert witnesses.

■ The final argument raised on this appeal is Borgman's contention that the trial court should not have required it to indemnify Marutamaya in the amount of $300,000 because of Borgman's failure to fulfill its contractual duty to obtain liability insurance in that amount and naming Marutamaya as an insured.

The evidence on this point is not in dispute: Jetro entered into a contract with Marutamaya, whereby the latter agreed to manufacture and import the fireworks into the United States and put on the fireworks display on September 19, 1969. The contract obligated Marutamaya "To insure in the U.S.A. (Inland insurance) for materials up to $50,000 and for third person accident insurance up to $300,000." On February 26, 1969, Marutamaya wrote to Borgman, advised that company of the proposed fireworks display and asked if Borgman would be interested in putting on the display and, if so, how much Borgman would charge. The letter contained the statement that "If you will wish to know this [*sic*]

details," to contact Jetro in San Francisco. Borgman did contact Jetro, and on March 19, 1969, Borgman wrote to Jetro and set forth the terms and conditions under which it was willing to put on the display. Borgman enclosed a contract which had been signed by Borgman. The contract named Borgman as the "Seller" and Jetro as the "Buyer." The contract contained the following provision: "Insurance limits are $100,000/ 300,000 Public Liability and $50,000 Property damage." Borgman also enclosed with its letter to Jetro an itemized price quotation specifying the services it would render. Item 6 on this quotation stated, "Furnish liability insurance in the amount of $100,000/300,000 and $50,000 property damage naming *all parties* as also insured." (Italics supplied.)

Jetro forwarded Borgman's contract and quotation to Marutamaya. On May 28, 1969, Marutamaya wrote to Borgman acknowledging receipt of the quotation and expressing its approval of same. Marutamaya stated in its letter that it would pay Borgman the amount of its quotation, and stated further that it was "enclosing our countersignatured document, and we are duly . . . [confirming] your quotation of U.S.$1,000.00-." Attached to the letter was Borgman's quotation and Borgman's contract. Marutamaya had signed the contract.

At the time when these events took place, plaintiff Souza was acting as the manager of Borgman's public fireworks display division, and it was he who handled the contractual negotiations with Marutamaya and Jetro. Souza testified that he contacted Jetro concerning the parties to be named in the certificate of insurance and that every party named by Jetro was included in said certificate.

By letter of August 29, 1969, Souza wrote to Jetro, on behalf of Borgman, enclosing the certificate of insurance. Borgman was named as the primary insured, and the additional insureds included Japan Week in San Francisco, its officers and executive committee, the Japanese Consulate and its representatives in San Francisco, Jetro and Chamber. Marutamaya was not named in the certificate of insurance.

Souza testified that on three or four occasions in the past, he had, while working for Borgman, put on displays of fireworks manufactured by Marutamaya. Jetro had been involved on at least one of these occasions. To the best of Souza's knowledge, Marutamaya had never been named as an additional insured under any contract of insurance that he had secured. After Souza had forwarded the certificate of insurance to Jetro on August 29, he received no communication from anyone requesting that Marutamaya's name be added to the certificate of

insurance. However, Souza acknowledged that he did not send a copy of the certificate of insurance to Marutamaya nor did he otherwise inform Marutamaya that it was not among the parties covered by the certificate of insurance.

In its appeal, Borgman takes the position that it had no contractual duty to obtain insurance for Marutamaya because (1) when Marutamaya initially wrote Borgman and asked if it would be interested in putting on the fireworks display, Marutamaya suggested that Borgman contact Jetro for details; and (2) Souza's testimony was uncontradicted that he named, as insureds, every party specified by Jetro and that no one ever instructed him to insure Marutamaya. Based upon this analysis of the evidence, Borgman contends that the trial court erred as a matter of law in finding that Borgman had breached its contractual obligation to insure Marutamaya.

Such reasoning is not persuasive. One of the items specified on the quotation prepared by Borgman itself was that Borgman would obtain liability insurance "naming *all parties* as also insured." (Italics supplied.) Surely, Borgman could not have reasonably believed that Marutamaya was not a "party." It was Marutamaya which first wrote to Borgman and asked if it would be willing to put on the fireworks display; likewise, it was Marutamaya which signed the contract prepared by Borgman and which later paid Borgman its $1,000 fee. Souza's own testimony was to the effect that he negotiated with Marutamaya and Jetro regarding the fireworks display; that Borgman's contract was with Marutamaya and Jetro; that the contract was issued to Marutamaya, and that Marutamaya signed it. In the face of this strong evidence that Borgman at all times thought of Marutamaya as a "party," it is difficult to accept Borgman's contention that it was entitled to disregard the contractual obligation set forth in its own quotation solely because Marutamaya had suggested in an earlier communication that Borgman could contact Jetro for details concerning the fireworks display. Nor do we find merit in Borgman's additional claim that it was entitled to rely upon the fact that it had used fireworks manufactured by Marutamaya on occasions in the past and had never insured Marutamaya against the negligent manufacture of such fireworks. In this instance, Borgman well knew that Marutamaya was not only furnishing the fireworks but was sending a pyrotechnician to supervise the display. Souza admitted that the insurance which Borgman was to obtain was intended to cover the entire fireworks display. Under the circumstances, the conclusion is inescapable that Borgman knew that Marutamaya was in need of insurance as much, if not more, than any other party connected with the fireworks display;

further, that Borgman knew that it was contractually obligated to obtain such insurance and failed to do so, apparently through oversight or inadvertence. Thus, we find that the trial court properly determined that Borgman was required to indemnify Marutamaya in the amount of the insurance which Borgman agreed, but failed, to obtain.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

Petitions for a rehearing were denied September 8, 1977, and the petitions of the defendants, cross-complainants and appellants for a hearing by the Supreme Court were denied October 6, 1977.